PETERSON v. ROESSLER & HASSLACHER CHEMICAL CO.

(Circuit Court, D. New Jersey. July 22, 1904.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—MEASURE OF DAMAGES.

In an action against a master for injuries to a servant, in the absence of aggravating circumstances, the measure of damages is the pecuniary loss sustained by plaintiff, and compensation for suffering endured.

2. SAME—DAMAGES—PECUNIARY LOSS—HOW ESTIMATED ON COMPLETE DESTRUCTION OF EARNING POWERS.

Where there has been a complete destruction of the plaintiff's earning powers, the pecuniary loss is to be theoretically estimated by the capital which, at a fair rate of interest, will produce a yearly sum equal to the average wages likely to be earned during the plaintiff's expectancy of life, less such a sum as, at compound interest for the same period, will equal and offset such sum.

3. SAME—DAMAGES—EXCESSIVENESS.

Where plaintiff, a laborer 39 years of age, who had been in defendant's employ for 11 years, during which time the character of his work had not materially changed, was so injured by the explosion of certain lime that he lost his sight at a time when his earning capacity was $1.50 per day, a verdict awarding plaintiff $9,500 was excessive, and should be re-

duced to $8,000, of which $6,000 should be awarded for the pecuniary loss sustained, and $2,000 as compensation for suffering.

Rule to show cause why a new trial should not be granted on the ground that the verdict is excessive.

Willard P. Voorhees, for the rule.

Joseph E. Stricker, opposed.

ARCHBALD, District Judge.[1]    The ground of the defendants' liability is a narrow one.    The plaintiff, who was employed as a laborer at their works, was engaged in the somewhat ordinary task of making whitewash from unslacked lime.    He was using a sheet-iron can or drum, about the size of a barrel, and, after the lime had slacked a little, incautiously pouring in a second supply of water and stirring it around with a stick as he stood over it, the lime exploded in his face and burned out his eyes.    The jury have found that, on account of the danger involved in the process, particularly where such a vessel as this was used, the plaintiff, who was unacquainted with it, ought to have been properly warned and instructed, for failure of which they have given him a verdict for $9,500.    It is claimed that this is excessive, in view of the fact that the plaintiff was an ordinary laborer, earning but $1.50 a day; and the court is moved to reduce the verdict to what would be reasonable, or to grant a new trial in case the plaintiff refuses to consent to it.    It is a delicate matter to revise the action of a jury in such a case, the whole subject of the damages to be given being committed so completely to their judgment.    There are a few general considerations, however, which afford some guide.    Aside from the question of the suffering endured, and there being no circumstances of aggravation, the basis of the verdict is the pecuniary loss which has been sustained; and to that, so far as it can be determined, it is to be confined.    The question in the present instance is whether that has been exceeded.    The plaintiff, as already stated, was a day laborer, doing the most ordinary manual work, and earning $1.50 a day.    He was 39 years old at the time of the accident, and had been in the defendants' employ for about 11 years, during which time the character of his work had not materially changed.    By the loss of his eyes he is deprived of the means of making a living, such as he had been doing, and the question is, what is a fair compensation therefor?

The earning capacity of the plaintiff at the time of the accident was undoubtedly at its maximum.    In all the years of his employment, he seems to have made no advance, and none could therefore be expected in the years to come.    His physical powers were also at their best. With steady employment, uninterrupted by sickness, accident, or other cause, his wages would amount to about $450 a year.    But with the uncertainties of life considered, of which his present condition affords an unfortunate example, he could hardly count on this for all time. Much less could he with advancing age, assuming that he lived out his expectation, according to the tables of mortality, of 25 or 30 years. What, then, can be said to represent the present cash value of the abil-

[1] Specially assigned.

ity to earn a living for himself and family of which he was possessed?

It is said by the plaintiff's counsel that it would cost $8,100, at the ruling rates of interest, to purchase an annuity of $468, which is taken as representing his yearly earnings, for a person of his age. But this is putting these earnings—all things considered—entirely too high. Neither is the problem to be solved on the basis of what would be required to buy an annuity. Year in and year out, from the age of 40 to 70, which comprised the probable span of life of this man at the time of the accident, $1.25 a day, or $375 a year, as it seems to me, was all, on an average, that he could expect to earn by the labor of his hands. This allows for contingencies which cannot be disregarded, as well as for decreasing ability with the advance in age. Now, $7,500 invested at 5 per cent, which it ought not to be difficult to obtain, would yield $375 a year throughout the plaintiff's life; affording him all that he could hope to earn, and leaving the principal intact at the end. Except for the latter circumstance, this might be regarded as fairly representing, in capitalized form, the earning power of the plaintiff, of which he has been deprived; but the fact that the capital remains unimpaired must be taken into consideration, and a material deduction made on account of it. Theoretically this should be such that, at compound interest for the period of expectancy, it would equal, and thus offset, the amount awarded, which it would thus practically wipe out. In the present instance, if I have figured it correctly, there should be a reduction of some $1,500 from the sum first named, leaving $6,000 to represent the actual pecuniary loss. To this must be added something, outside of the question of earnings, to compensate for the suffering which the plaintiff has endured, and for the fact, aside from any sentiment, that he must go blind all his days. Fixing this at $2,000, the total damages would be $8,000, to which amount, in my judgment, the verdict should be reduced.

It is therefore ordered that the plaintiff within 20 days agree to a reduction of the verdict to $8,000, remitting the excess, or otherwise that the defendants have a new trial.