HARRY L. MARTIN v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—46 S. W. (2d) 149.

Division One, February 11, 1932.

730

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.,* for appellant.

*W. H. Douglass* and *C. O. Inman* for respondent.

RAGLAND, J.—This is an action under the Employers' Liability Act to recover damages sustained by plaintiff while employed by defendant as locomotive engineer on one of its interstate freight trains running between Amory, Mississippi, and Memphis, Tennessee. As the facts are set forth somewhat at length in the opinion handed down on a former appeal in this case (Martin v. Railway, 323 Mo. 450), we shall only epitomize them here.

The freight train in question was being drawn by two locomotives, both at the head of the train. Plaintiff was the engineer on the second. At a point on defendant's main line just north of a station known as Waites, the coupling between the two locomotives broke, causing them to separate and the air hose connecting them to be pulled apart, thereby automatically setting the brakes and bringing both engines and the train to a stop. The broken coupling on plaintiff's engine was hanging down on the pilot in such condition that it was hazardous to proceed without first removing the broken parts. The engines stopped some three or four feet apart and plaintiff went in between them for the purpose of removing the broken parts, and while so engaged plaintiff's engine and the train of cars thereto attached, which were standing on a slightly descending grade, moved or rolled down upon him, catching him between the pilot of his engine and the tender of the head engine and causing the injuries of which he complains.

The entire train, consisting of two engines, thirty odd freight cars and a caboose, was as a unit controlled by an automatic air-brake equipment  On each engine there was a "double-heading" cock. This is a valve which, when opened or "cut in," permits the air from the compressed-air reservoir on the engine to pass into the air line of the train, increasing the pressure and to the same extent releasing the brakes. When a train is being pulled by two engines it is the

universal practice, and the rules of defendant required, that the double-heading cock on the second engine be "cut out." This, in order that the automatic air brakes may be under the control of the engineer of the lead engine without interference on the part of the engineer of the second. In addition to the automatic air brakes which controlled the train as a whole, each of the engines of the train in question was equipped with an independent air brake. At the end of the air hose of the second engine, just back of where it coupled with the hose of the first, there was a valve known as an angle cock.

Plaintiff as a witness in his own behalf testified, and his testimony in this respect is not controverted, that if the angle cock just referred to had been open, or if the double-heading cock on the second engine had been cut out, or if the independent air brake on that engine had been set, the train would have remained stationary and not rolled down on him. If either the angle cock had been open or the double-heading cock cut out, the automatic air brakes would not have been released; if the independent engine brake had been set, it would have held the train. As the train did move it follows as a necessary deduction that the angle cock was closed, the double-heading cock cut in and the independent brake not set; and this seems to have been conceded on the trial.

It is manifest that the angle cock was open prior to the separation of the engines by the breaking of the coupling, and that it remained open until someone closed it after the engines parted. The closing of the angle cock, however, is not charged by either party to have been negligent. Their attitude at the trial indicates that both regarded it as the normal and usual thing to be done under such circumstances. The petition alleges that, after plaintiff left the engine to remove the broken coupling, some employee of the defendant engaged in running the train negligently cut in the double-heading cock and released the independent engine brake. This the answer denies, and avers that on the contrary plaintiff at the time he left the cab of the engine negligently failed to have his double-heading cock cut out and the independent air brake set. The contested issue, therefore, was whether some other employee of defendant cut in the double-heading cock and released the independent brake after plaintiff had left the engine cab. On this issue plaintiff testified that before he left his engine he set the independent air brake; that the double-heading cock was cut out just as it had been during the entire trip; that there were two persons, and only two, on or about the engine in a position to have manipulated the brake valves after he got down to remove the broken coupling: Gravely, the conductor, and Perkins, the fireman: and that these two were riding in the engine cab at the time of the separation of the engines and remained there until after the train movement causing his injury. Defendant

called Gravely and Perkins as witnesses. Each testified that he did not release the independent air brake or cut in the double-heading cock, and that he did not see the other do so.

Under two instructions which were the converse of each other, one asked by plaintiff and the other by defendant, the court submitted to the jury the issue of whether plaintiff at the time of leaving the engine failed to cut out the double-heading cock and set the independent brake, or whether some other employee, after plaintiff had gotten down, cut in the double-heading cock and released the brake. The jury found the issues as a whole for plaintiff and assessed his damages at $59,825. The case is here again on defendant's appeal.

The appellant assigns the following rulings of the trial court as grounds for the reversal of its judgment: (1) The overruling of defendant's demurrer at the close of plaintiff's case in chief and again at the close of the case as a whole; (2) the giving of plaintiff's principal instruction, numbered 2; (3) the refusal of withdrawal instructions asked by defendant; and (4) the refusal to set aside the verdict on the ground of excessiveness. Of these in order.

I. Appellant insists that its demurrer should have been sustained for the reason that under the evidence a verdict for plaintiff could not be reached except by basing an inference upon an inference. A brief analysis of the proof will aid in determining whether the position is well taken. There was no direct evidence that the double-heading cock was cut in and the independent brake was not set at the time of and immediately preceding the movement of the engine and train. Those facts were inferred from the fact that the train moved, which was established by testimonial evidence. The drawing of this inference was not, however, left primarily to the jury, but to a railroad man whose long operative experience in running freight trains equipped with brake mechanisms similar to the one in use on the train in question rendered him entirely competent to make the deduction. His conclusion in that respect was not controverted, but was regarded by both parties on the trial as establishing as facts that the double-heading cock was cut in and the brake not set. But that perhaps is irrelevant in determining the applicability of the rule against piling inferences. The facts just noted will therefore be regarded as having been derived from inference in the usual and ordinary sense. From that inference we proceed to the next step in the proof: Plaintiff testified that when he left the cab the double-heading cock was cut out and the independent brake set. At this point it seems necessary to draw another inference, not from the preceding inference but from the testimonial evidence, namely, that after plaintiff got down off the engine the cutting in of the double-

heading cock and the releasing of the engine brake was done by some human agency—by some individual or individuals there present. Looking next to the factual evidence, plaintiff testified that defendant's employees, Gravely and Perkins, were the only persons on or about the engine who were in a position to do the things just mentioned. The inference clearly arises that one or both did them. The rule invoked by the appellant is aimed at inferences drawn solely from previous inferences and otherwise unsupported, so that the evidence becomes too remote. [United States v. Ross, 92 U. S. 281, 284.] Looking to the circumstances as they confront us, we think that the ultimate inference that some of defendant's employees other than plaintiff cut in the double-heading cock and released the engine brake after the latter left the engine is allowable. Whether such inference should be drawn in the face of the positive testimony of Gravely and Perkins to the contrary was for the jury. That negligence can properly be inferred from the releasing of the brakes, in the circumstances disclosed by the evidence as a whole, cannot be doubted. Appellant's contention under this head is disallowed.

II. Appellant contends that plaintiff's Instruction 2 was erroneous on two grounds: (1) That it authorized the jury to find ultimate facts which could only be arrived at by building inference upon inference; and (2) that it authorized the jury to find that the engine and train were caused to move by two things: the cutting in of the double-heading cock and the releasing of the engine brake, when, under the undisputed evidence, a third factor was essential before the engine and train could move, to-wit, the closing of the angle cock on the front of the engine. The first ground is fully covered by the preceding paragraphs. As to the second: Under the undisputed evidence it was absolutely necessary for the angle cock to be closed in order for the cutting in of the double-heading cock and the releasing of the independent engine brake to cause the train to move. The jury found that those two things did cause the train to move, and that finding necessarily implied the further finding that the prerequisite condition, namely, the closed angle cock, existed. The instruction properly directed the jury's attention to the *facts in issue*.

III. The petition contained six or seven assignments of negligence, and at the close of the case defendant requested as to each the giving of a formal withdrawal instruction. Plaintiff directed his evidence to the support of but one of the assignments; that one was submitted under the instructions heretofore referred to; the issue tendered by it was clear-cut. Formal instructions withdrawing from the consideration

of the jury issues which had not been tendered for their consideration would in no way have been an aid to them in determining the one which was submitted; on the other hand such instructions would or might have tended to mislead and confuse. Their refusal was not error. [O'Donnell v. Railroad, 324 Mo. 1097, 26 S. W. (2d) 929, 936; Dietzman v. Screw Co., 300 Mo. 196, 215, 254 S. W. 59.]

IV. The jury assessed plaintiff's damages at the sum of $59,825. Conforming to the condition imposed by the trial court in overruling the motion for a new trial, plaintiff entered a *remittitur* reducing the award to $30,000, for which judgment was entered. Appellant insists that the assessment is still excessive. A brief statement of the relevant evidentiary facts is necessary at this point.

At the time of the casualty plaintiff was thirty-nine years of age, perfectly normal physically and in good health. He had been in the employ of defendant for more than twenty years—as a locomotive engineer during the last five or six. He was earning on an average $275 a month.

As a result of the second engine moving down against the tank of the first, plaintiff's right hand and wrist were crushed, both bones of the left leg between the knee and the ankle and the fibula of the right leg were broken. The muscular tissues of the right leg were also badly lacerated and torn. He spent from three and a half to four months in a hospital. The bones of the left leg were set following the injury, but the union was faulty and necessitated a rebreaking and resetting. A second amputation of a part of the right fore-arm was also necessary. His left leg was in a plaster cast so long that adhesions in the ankle formed. At the point where the fibula of the right leg was fractured an infection set up in the membrane covering the bone. This resulted in an open pus-discharging sore that had not entirely healed at the time of the second trial, four and a half years after the injury.

Plaintiff suffered great pain for many months, and still suffers occasional pain in the left ankle and legs. He walks with a limp, his left leg is a half inch shorter than it was and the motion of his ankle is limited in all directions. One of his medical witnesses testified that in his opinion the impairment of the ankle was permanent and that plaintiff would probably suffer pain in the ankle in the future "on prolonged standing or walking, or in great exertion." The shortening of the left leg and the loss of the right hand are of course permanent.

Plaintiff's injuries have wholly incapacitated him for doing the kind of railroad work he was engaged in at the time he suffered them. What his earning power will be in the future is somewhat problemati-

cal. During the interim of two or three years between the time that he had made sufficient recovery to get around and the last trial he earned five or six hundred dollars, in selling artificial limbs and in soliciting insurance. However, his actual loss of earnings up to the time of the trial approximated $15,000. At the time he was hurt he had a life expectancy of twenty-nine years, and according to a computation made by his counsel it would require the sum of $48,500 at four per cent interest to pay him during the remainder of that period an annuity equivalent to the wages he was earning prior to his injuries. On the whole we are unable to say that $30,000 is excessive as an award of damages.

The judgment of the circuit court is affirmed. All concur.