JEWELL MORRIS, Plaintiff, Respondent, v. E. I. DuPONT DE NEMOURS & COMPANY, a Corporation, ET AL., Defendants, Appellants.— 139 S. W. (2d) 984.

Division One, May 7, 1940.*

---

*Jones, Hocker, Gladney & Grand, Lon O. Hocker, Abel Klaw* and *Lon Hocker, Jr.*, for appellants.

128

*Joseph A. Lennon, Bryan Purteet, K. P. Spencer* and *Francis R. Stout* for respondent.

CLARK, J.—Plaintiff while employed as a miner in a clay mine operated by the Parker-Russell Company, at Wellsville, Missouri, on April 17, 1929, was injured by a premature explosion of dynamite. He sued E. I. DuPont de Nemours & Co., a corporation, (hereafter called the DuPont Co.) and its employee, Raithel, alleging; that the dynamite had been purchased from the DuPont Company who manufactured it; that Raithel, as the employee of the DuPont Company, had charge of mixing the explosive element, nitroglycerin, with the nonexplosive matter used in the manufacture of the dynamite; that defendants were careless and negligent in unevenly mixing the various elements so that some of it contained too much of the explosive matter and was likely to, and did, explode with slight friction and prematurely; and that the premature explosion which caused plaintiff's injuries was directly due to said negligence.

This is the second appeal of the case to this court. At the first trial the verdict was for the defendants. On appeal by plaintiff, we reversed and remanded for error in certain instructions given on behalf of defendants. [341 Mo. 821, 109 S. W. (2d) 1222.] At the second trial plaintiff recovered a verdict and judgment for $100,000.00 and defendants have appealed and now assign as error:

1. The overruling of defendants' demurrers to the evidence;

2. The rejection as evidence of certain motion pictures offered by defendants;

3. That the verdict is excessive and the result of passion and prejudice, induced by the conduct of plaintiff's counsel in offering and the trial court's ruling on, certain incompetent and prejudicial testimony and in improper argument to the jury by plaintiff's counsel.

1. *Demurrers to the evidence.* The facts developed at the first trial are fully set out in our opinion on the first appeal. We there held that plaintiff made a submissible case and, unless the evidence at the second trial is materially different from that introduced at the first trial, or unless we were mistaken as to some controlling fact on the first appeal, our former opinion is the law of the case. [Denny v. Guyton, 331 Mo. 1115, 57 S. W. (2d) 415, and cases cited.

Also Cunningham v. Doe Run Lead Co. (Mo.), 26 S. W. (2d) 957.]

Appellants say there is a substantial difference in the evidence in this respect: that in the first trial there was no adequate description of the Hull machine in which dynamite is packed into cartridges; that there was no comparison between the force with which the dynamite was struck in so packing it and the force which, under plaintiff's evidence, caused the same dynamite to explode; that in the second trial it was shown that, in packing the dynamite into cartridges, the machine employed wooden plungers striking the dynamite in each cartridge four or five strokes at a pressure of seventy-six and one half pounds per square inch at each stroke; that plaintiff's expert, Dr. Cuno, testified that the pressure which later caused the explosion was less than two thirds of an ounce per square inch. From all this appellants draw the conclusion that the inferences deducible from the testimony are so opposed to all reasonable probability as to be unbelievable. We think appellants' argument on this point confuses the terms "pressure" and "friction." Plaintiff's expert based his deduction on the fact that the dynamite was exploded by a small amount of "friction." On this record, we cannot say that because the dynamite had previously withstood a large amount of "pressure" it is unbelievable that it was later exploded by a small amount of "friction." Besides, the testimony as to the amount of pressure which had been previously applied to the dynamite came from appellants' (defendants') witnesses and is not binding on respondent (plaintiff) even though uncontradicted. [Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621; Bank of Slater v. Harrington, 218 Mo. App. 645, 266 S. W. 496.]

We have compared the evidence in the instant case with the facts stated in our former opinion and find no material difference. While the question is somewhat close, we adhere to our former ruling that, viewing the evidence in the light most favorable to plaintiff, a submissible case was made and the court did not err in overruling defendants' demurrers to the evidence. [McLeod v. Linde Air Products Co., 318 Mo. 397, 1. S. W. (2d) 122; Solomon v. Moberly Light & Power Co., 303 Mo. 622, 262 S. W. 367; O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55; Martin v. Ry., 329 Mo. 729, 46 S. W. (2d) 149.]

2. *Motion pictures as evidence.* Defendants proved that their plant at Ashburn, Missouri, in which the dynamite in question was manufactured, was dismantled prior to the institution of this suit; that some of the machinery formerly used in that plant had been shipped to other plants of the DuPont Company, but the "mixing bowl" had been destroyed. (Defendants claimed that the plant was dismantled on account of decreased business and the wooden mixing bowl destroyed due to the danger that it may have become saturated with nitroglycerin from continued use.) Defendants offered in evi-

dence, and requested permission to project on a screen before the jury, a film of a motion picture taken at a DuPont plant in New Jersey, showing the various processes in the manufacture of dynamite, including the operation of the mixing machinery, the packing of the dynamite into cartridges, labeling it and storing it in boxes for shipment. Defendants offered proof that the machinery and processes shown in the picture were identical with those formerly in use at the Ashburn plant. It was stipulated that the picture accurately represented what it purported to represent.

Plaintiff's counsel objected to the admission of the picture assigning, among other reasons, that it did not show the particular machinery involved in the suit, nor the same employees; that it contained much immaterial and prejudicial matter and would tend to confuse and not enlighten the jury. The trial court ruled as follows:

"I feel if I were to permit these pictures to be shown it would be reversible error. Therefore, I sustain the objection."

Defendants claim this ruling is erroneous, in this: first, the court, without viewing the picture and as a matter of law, ruled the evidence out without exercising his discretion; second, had the court exercised his discretion, it would have been an abuse of such discretion to exclude the picture.

Defendants' first claim is clearly untenable. While the court did not view the picture, he heard much evidence and himself directed many questions as to the authenticity of the picture, what it purported to show and the conditions under which it was taken. His ruling constituted an exercise of his discretion.

This brings us to the question of whether the court properly exercised his discretion; or, in other words, whether the exclusion of the picture constitutes error.

The admissibility of motion pictures as evidence is a novel question in the appellate courts of this State and has seldom been discussed by the courts of other States.

The question of admitting in evidence still pictures of localities, machinery, etc., with persons specially posed to represent the positions of those involved in the occurrence under consideration, has frequently arisen. [State v. O'Reilly, 126 Mo. 597, 29 S. W. 577; State v. McGee, 336 Mo. 1082, 83 S. W. (2d) 98; Lynch v. Ry., 333 Mo. 89, 61 S. W. (2d) l. c. 923; Riggs v. Ry., 216 Mo. 304, 115 S. W. l. c. 979; Harrison v. Green, 157 Mich. 690, 122 N. W. 205; Dederichs v. Railroad Co., 14 Utah, 137, 46 Pac. 657; Bowling Green Gaslight Co. v. Dean (Ky.), 134 S. W. 1115.] The motion picture as evidence is discussed in the following: Pandolfo v. United States, 286 Fed. 8; Commonwealth v. Roller, 100 Pa. Super. Ct. 125; 2 Wigmore on Evidence (2 Ed.), sec. 798; 22 C. J., p. 914; 83 A. L. R. 1307-1319.

From an examination of the authorities cited, and others, we conclude that the basic principles which govern the admission of still pictures govern the admission of motion pictures also; for, after all, the motion picture is but a series of still pictures. Perhaps a greater degree of caution is required in admitting the motion picture because, while the danger of false perspective or of intentional fabrication exists as to both, these dangers are greater in the motion picture. Considerable discretion must be vested in the trial court as to the accuracy of the picture. In the instant case that problem was set at rest by the preliminary proof and by the stipulation of parties. Considerable discretion must also be left in the trial court as to the relevancy of the picture and as to whether it will tend to aid or confuse the jury.

The purpose of all judicial investigation is to ascertain the truth. As a material aid to that purpose, it is often proper to introduce maps, diagrams, models, pieces of machinery, pictures, etc., because a more intelligent understanding can be thereby gained than by a verbal description. The instant case is one in which such evidence would be particularly helpful, for it involves machinery, objects and processes which are unfamiliar and difficult of verbal explanation to the average juror. In fact, some articles such as tamping sticks, dynamite caps, pieces of clay, etc., were received in evidence. We believe that an accurate motion picture showing the operation of the mixing machine is proper evidence to this case.

However, the sole charge of negligence alleged is the uneven mixing of the dynamite and the picture shows much more than the mixing process. It shows the process of packing into cartridges during which the dynamite is struck by wooden plungers. This part of the picture, we think, unduly emphasizes defendants' claim, heretofore mentioned, that the pressure applied to the dynamite in packing it proves it unlikely that it would thereafter explode by slight friction. Other portions of the picture do not relate to any issue in the case. We say this because, should the case be retried, the film should be carefully revised as to eliminate everything except the portion showing the mixing process.

Since the film contained irrelevant and prejudicial matter, the trial court was under no duty to separate the good from the bad and did not err in rejecting the picture as evidence. [Lynch v. Ry., 333 Mo. 89, 61 S. W. (2d) l. c. 923.]

3. *As to the amount of the verdict and conduct of counsel.* The plaintiff's injuries are extremely serious. He lost the sight of both eyes, one eye being blown out by the explosion. One eardrum was ruptured, his hearing impaired and he complains of constant noise in his head. He was otherwise painfully injured in head, chest and arms. No court can perform the miracle of restoring plaintiff's sight. No sane person would voluntarily receive the injuries which plain-

tiff has suffered for all the wealth in the universe, but that is not the gauge by which plaintiff's recovery must be measured. If it were, then in every case of 'total blindness or other comparable injury due to negligence we would have to take the total assets of the defendant and transfer them to the plaintiff. There is no mathematical formula by which we can accurately determine the amount of compensation in any case of serious and permanent injury. All cases hold the recovery is for ''fair and reasonable compensation.'' Every case must largely rest upon the foundation of its own facts and yet we must give some consideration to the amount which other cases have held to be fair and reasonable compensation for similar injuries. We append as a marginal note a list of all the cases cited on this point by both parties.* In none of them was the verdict permitted to stand for as much as one-half the amount of the verdict in the instant case. Unquestionably this verdict is excessive by many thousands of dollars. What, then, is our duty in the premises? In recent years this court has often caused reduction in excessive recoveries by ordering *remittitur,* with the alternative of remand for new trial if the *remittitur* be not accepted. We would like to pursue that course here, because this case has been in court eight years, tried twice, two appeals have reached us and one has gone to the Federal Circuit Court of Appeals. If an excessive verdict were the only error confronting us we would order a *remittitur,* but the record discloses other errors which may have effected not only the amount of the verdict, but also the question of liability. One reason for saying this is that the first jury refused to convict the defendants

---

*Parrish v. United Rys., 260 S. W. 748 (Mo.); Hutchcraft v. Laclede Gaslight Co., 282 S. W. 38 (Mo.); Loduca v. St. L. S. F. Ry., 315 Mo. 331, 289 S. W. 908; Cunningham v. Doe Run Lead Co., 26 S. W. (2d) 957 (Mo.); Skidmore v. Haggard, 110 S. W. (2d) 726 (Mo.); Knott v. Mo. Boiler & Sheet Iron Works, 299 Mo: 613, 253 S. W. 749; Bane v. Irwin, 172 Mo. 306, 72 S. W. 522; Johnson v. Mo. Pac., 96 Mo. 340, 9 S. W. 790; Adams v. Quincy, O. & K. C. Railroad Co., 287 Mo. 535, 229 S. W. 790; Jones v. St. L. S. W. Ry., 125 Mo. 666, 28 S. W. 883; Rose v. Telegraph Co. et al., 328 Mo. 1009, 43 S. W. (2d) 562; Schleappe v. Terminal Ry., 339 Mo. 562, 98 S. W. (2d) 616; Aly v. Terminal Assn., 119 S. W. (2d) 363 (Mo.); Yurkonis v. Delaware, L. & W. Railroad Co., 213 Fed. 537, 220 Fed. 429; Cashmore v. Peerless Motor Car Co., 154 App. Div. 814, 139 N. Y. Supp. 359; Marsh v. Ush Hdwe Co., 73 Wash. 543, 132 Pac. 241; Stearns v. Reidy, 33 Ill. App. 246, affd. 135 Ill. 119, 25 N. E. 762; New Jersey R. & T. Co. v. West, 32 N. J. L. 91, Am. Neg. Cas. 276; Dunn v. Burlington, C. R. & N. Railroad Co., 35 Minn. 73, 27 N. W. 488; O'Neill v. Met. S. Ry. Co., 103 App. Div. 607, 93 N. Y. Supp. 145; Mather v. Rillston, 156 U. S. 391, 39 L. Ed. 464, 15 Sup. Ct. 464; Chi., Union T. Co. v. Roberts, 131 Ill. App. 476, affd. 229 Ill. 481, 82 N. E. 401; Aurora v. Rockabrand, 47 Ill. App. 106, affd. 149 Ill. 399, 36· N. E. 1004; Peterson v. Roessler & H. Chem. Co., 131 Fed. 156, 134 Fed. 789; Waters v. Atlantic Ref. Co., 9 Pa. Dist. Rep. 473; Deep Min. & Drainage Co. v. Fitzgerald, 21 Colo. 533, 43 Pac. 210; Detroit Taxi & Transfer Co. v. Pratt, 2 Fed. (2d) 193; Stolarecz v. Interstate Iron & Steel Co., 207 Ill. App. 7; St. L., I. M. & S. Ry. Co. v. True, 71 Okla. 264, 176 Pac. 758; Barclay v. Wetmore & M. Granite Co., 94 Vt. 227, 110 Atl. 1; Bagaini v. Donk Bros. Coal & Coke Co., 199 Ill. App. 76; O'Hara v. Davis, 109 Neb. 615, 192 N. W. 215, 262 U. S. 741, 67 L. Ed. 1209, 43 Sup. Ct. 705.

of any negligence while the second jury, on substantially the same evidence, returned a verdict for $100,000.

Some errors were either not sufficiently objected to at the trial or not preserved in the assignments of error in this court. For these alone we would not remand the case, but, since a new trial is necessary, we deem it proper to briefly refer to them. Although plaintiff sued, among other things, for loss of earnings, defendants were refused permission to cross-examine plaintiff as to any earnings received by him since the injury. Plaintiff, by many employees of the Parker-Russell Company, offered evidence that no metal tamping rods were used in any part of the mine, but defendants were refused the right to prove by other miners that such metal rods were used. Part of the argument of plaintiff's counsel (set out in the abstract, but not objected to when made) was improper.

At least one occurrence at the trial, which we think was so prejudicial as to constitute reversible error has been properly preserved for our consideration. While F. R. Wilson, a witness for defendants, was being cross-examined by plaintiff's counsel, the record shows the following:

"Q. Mr. Wilson, I hand you an invoice, Plaintiff's Exhibit A, and ask you to read its top line across there. A. '2,000 pounds of R. C. extra 40 per cent, 1¼ x 8, No. 1, at 16¼ cents per pound delivered, $325.'

"Q. Now, I believe you said that this plant at Ashburn turned out about 10,000,000 pounds, or sold about 10,000,000 pounds, of dynamite each year. That would be, the gross income from that plant up there would be $1,600,000, wouldn't it?

"Mr. HOCKER: I object to that as immaterial to the inquiry.

"Mr. STOUT: The purpose of that . . .

"Mr. HOCKER: Well, I do not think you should state the purpose.

"The COURT: Let him finish his objection or statement.

"Mr. STOUT: They say they tore this plant down up there because it was not making money. That was the intimation.

"Mr. HOCKER: Due to lack of business.

"Mr. STOUT: Due to lack of business? Well, I asked one of their witnesses if it was not a fact that the plant was obsolete, and that is the reason they tore it down.

"The COURT: You may make your statement, Mr. Hocker.

"Mr. HOCKER: I cannot see the materiality of it.

"The COURT: As you remember, yesterday we spoke about this particular plant at Ashburn, and we also had evidence here that there are fifteen, is that right, fifteen other plants throughout the United States?

"The WITNESS: No, seven.

"The COURT: Seven other plants.

"MR. HOCKER: At this time?

"The COURT: Yes. This question pertains to the Ashburn plant; is that right?

"Mr. STOUT: Yes.

"The COURT: You may answer the question.

"To which ruling of the Court the defendants, by counsel, then and there duly excepted and still continue to except.

"A. You want me to multiply sixteen and one-quarter cents by 10,000,000?

"Q. If you will. A. It is in the vicinity of a million and two-thirds.

"Q. One million and about six hundred thousand dollars? A. That is assuming all powder sales were at sixteen and two-thirds cents, of course.

"Q. This was one of the smaller plants, too? A. Yes, sir."

Defendants had previously sought to show the total amount of dynamite made by the DuPont Company in thirty years prior to plaintiff's injury, for the purpose of showing the experience of the company. The court had limited this proof to the Ashburn plant and the witness, Wilson, testified from records *up to 1931*, said the Ashburn plant made about ten million pounds annually. The witness said the company had seven plants, some of them making five times as much as the Ashburn plant. The Ashburn plant was dismantled in the *fall of 1931*.

Now, the effort of plaintiff to show the gross income of the Ashburn plant previous to 1931 would not tend to disprove defendants' claim that the plant was dismantled several months later due to decreased business. Nor can we believe that such was the real purpose of plaintiff's counsel. Moreover, the remarks of the court were much more damaging to defendants than were the questions of plaintiff's counsel. The court emphasized the fact of other plants, thus re-calling to the jury the previous testimony as to the capacity of those plants and consequently the enormous gross income of the DuPont Company throughout the United States. The natural and almost certain effect of this was to lead the jury to believe that the gross income of the DuPont Company was a material issue in the case. Since plaintiff's petition did not allege malice nor claim exemplary damages, this testimony was improper and highly prejudicial. [Daniels v. Langensand, 231 Mo. App. 777, 96 S. W. (2d) 911; Sculley v. Rolwing (Mo. App.), 88 S. W. (2d) 394.]

Plaintiff argues that the point is not properly preserved because the defendants' objection was only as to the materiality of the evidence. That might be sound argument if it were considering only the questions asked by plaintiff's counsel, but every experienced lawyer knows that it is one thing to object to the conduct of opposing counsel and quite another thing to object to the remarks of the trial judge. Jurors usually have their eyes and ears open for any little act or word of the trial judge which may indicate his view of the case.

136

When such view is indicated, counsel can hardly be blamed for failing to enter into an argument with the judge, as that would likely emphasize the judge's view. We do not mean to depart from the general rule which requires that prejudicial remarks, even those made by the judge, be seasonably called to the attention of the trial court. We think they were so called to the court's attention here and, under the circumstances, defendants' objection to the testimony, and exception to the ruling of the court sufficiently preserve the point. [In re Golden's Estate (Cal.), 37 Pac. (2d) 106.]

The excessiveness of the verdict coupled with the errors referred to above make it imperative for us to remand this case. [Lebrecht v. United Rys. (Mo.), 237 S. W. 112; Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673; Taylor v. Ry., 185 Mo. 239, 84 S. W. 873; Stolze v. Transit Co., 188 Mo. 581, 87 S. W. 517.]

This case is hereby reversed and remanded for a new trial. All concur, except *Douglas, J.,* who concurs in result.

*NOTE: Opinion filed at September Term, 1939, March 6, 1940; motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.