HARRIS

v.

ST. LOUIS PUBLIC SERVICE CO.

No. 43459.

Supreme Court of Missouri.

Division No. 1.

July 12, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied and Opinion Modified on Court's Own Motion Sept. 13, 1954.

Lloyd E. Boas, Lester F. Stephens, St. Louis, for appellant.

Miller & Landau, St. Louis, for respondent.

CONKLING, Judge.

Bertha Harris, plaintiff-respondent, in her action for damages for personal injuries alleged to have been sustained while boarding a bus, had the verdict of the jury and the ensuing judgment thereon for $13,-500 against the defendant, St. Louis Public Service Company. After adverse ruling upon its motion for new trial, defendant has appealed.

Defendant here has assigned as error a number of rulings of the trial court upon various incidents which occurred during the course of the trial, contends that instructions 1 and 3 were reversibly erroneous, and that the judgment was excessive. Defendant does not contend that upon the evidence adduced that court erred in submitting the case to the jury.

From the transcript before us it appears that about noon on June 1, 1951, plaintiff was attempting to board one of defendant's westbound Page-Wellston buses at the regular bus stop at Eighth Street and Washington Avenue in St. Louis, Missouri. Several passengers boarded the bus ahead of plaintiff. When plaintiff stepped onto the bottom step at the front entrance of the bus one or more passengers were between plaintiff and the bus operator. While plaintiff was upon that bus step, and before she could move into the bus, the bus operator started the bus and closed the bus doors upon her. The bus then moved four or five feet west. Plaintiff called out, "Oh, you caught me." The bus operator thereupon suddenly stopped the bus and caused the doors to again be opened, thus throwing plaintiff backward off of the bus and onto the concrete sidewalk. With the help of a policeman she then boarded the bus, sat down for a minute and, because her right arm was paining her, then left the bus and went to Dr. Michael's office. After examination by that doctor she was sent to other doctors for X-ray examination, then removed to St. Anthony's Hospital where her right arm was placed in a cast. Plaintiff's right arm was there operated on June 4 and she was discharged from the hospital on June 13, 1951.

Before this occurrence, and on April 13, 1951, plaintiff had sustained a fall in her home and had broken her right wrist which

she contends was again fractured on June 1 in the instant occurrence. For that April break of her right wrist she had been treated by Dr. Michael. On the morning of June 1 she had again been to Dr. Michael's office for further examination of her wrist. After that examination she was returning to her home when the instant occurrence happened. Dr. Michael that morning had terminated physio-therapy treatments of plaintiff's wrist, the previous wrist fracture having progressed so that she had use of the wrist and Dr. Michael had advised her that she could return to her employment.

■ Upon this appeal defendant first contends that, during the argument of defendant's counsel to the jury, the court erred in refusing to permit its counsel to draw unfavorable inferences from plaintiff's failure to produce as a witness one of her attending physicians, Dr. Leydig, and also erred in ruling that Dr. Leydig was equally available to defendant. Dr. Leydig was one of plaintiff's attending physicians in the hospital, and thereafter. She saw him about two weeks before the trial. After this accident Dr. Michael referred plaintiff to Dr. Lottes and Dr. Leydig. The latter two are orthopedic surgeons who office together and work together. Drs. Lottes and Leydig treated plaintiff and both had operated on her wrist on June 4, 1951. Both treated her after her release from the hospital. Dr. Michael testified that Dr. Leydig and Dr. Lottes are the heads of the orthopedic department of the hospital, have the same standing on the staff, the same recognition at the hospital and that "if one is not available, then the other functions." Both Dr. Michael and Dr. Lottes testified fully and at length concerning plaintiff's injuries, the diagnosis, treatment, disability and prognosis.

Defendant's counsel in argument to the jury commented unfavorably upon the failure of plaintiff to have Dr. Leydig testify in the case, and sought to have the jury infer that Dr. Leydig was not called to testify because that doctor "would say that this is the same injury that existed in that arm on April 13th." After the court had sustained plaintiff's objection, plaintiff's counsel in the colloquy advised the court that "Dr. Leydig had a subpoena and promised to come in; but was unable to get here and his associate came in."

While we think defendant's counsel had the right to comment on the failure to call as a witness a doctor who examined and treated plaintiff, we do not think the court's ruling was prejudicial under the circumstances of this case. In the instant circumstances it does not appear that the testimony of Dr. Leydig would have been superior to or more complete than the testimony of plaintiff's other doctors whom plaintiff did call as witnesses, and who testified. Dr. Leydig and Dr. Lottes each operated and treated plaintiff, and from the record it appears that, if he had testified, Dr. Leydig's testimony would have been merely corroborative of and cumulative to the testimony given by Dr. Lottes. The above contention of reversible error must be denied. Russell v. St. Louis Public Serv. Co., Mo.Sup., 251 S.W.2d 595, 599, 600, Roehl v. Ralph, Mo. App., 84 S.W.2d 405, 413, Miller v. Fleming, Mo.App., 259 S.W. 139, 141, Wilson v. Miss Hulling's Cafeterias, 360 Mo. 559, 570, 229 S.W.2d 556, 562.

■ Defendant next complains of misconduct of plaintiff's counsel during the opening statement. Plaintiff's counsel there made reference to the fact that, at defendant's request, plaintiff had been examined by Dr. John Patrick Murphy, and, having a copy of Dr. Murphy's report, counsel started to state to the jury what Dr. Murphy had purportedly found and concluded from such examination. Defendant's objection to that portion of the opening statement was sustained. Plaintiff's counsel then stated that "if the defendant offers this medical witness here," then Dr. Murphy's testimony would be that plaintiff had sustained certain permanent injuries. When, after defendant's previous objection had been sustained, plaintiff's counsel, in violation of the court's ruling, proceeded to state the effect of Dr. Murphy's testi-

mony the trial court should have summarily reprimanded plaintiff's counsel and enforced its prior ruling. But the court did not do so, nor did defendant's counsel request the court to do so and no motion for reprimand or mistrial was made. On the contrary, defendant's counsel sat mute and allowed plaintiff's counsel to proceed. Upon this record we cannot convict the trial court of error. It clearly was neither error nor inaction materially affecting the merits of the trial.

■ Moving Pictures. During defendant's opening statement its counsel told the jury that defendant would offer as evidence certain moving pictures of plaintiff which "were first started being taken April 18, 1952" showing the various things plaintiff could do and her claimed physical activities subsequent to June 1, 1951. These pictures had been taken for defendant by Eugene W. Wines, a special investigator. Mr. Wines, when called as a witness, testified he took 255 feet of 16 Milimeter film of plaintiff. Mr. Wines was called to the witness stand near the close of the court day, the roll of film was identified as exhibit 9, but there was no time to show the film that day. The next morning before court began, out of the presence of the jury, the film was run for the trial judge, all the counsel, and Mr. Wines. During that run of the film it was discovered, and it was conceded by defendant, that a portion of the film taken was not of plaintiff, but of plaintiff's sister. Defendant thereupon requested permission of the trial court to edit the film and to delete therefrom that portion, approximately 90 feet, which showed plaintiff's sister, instead of plaintiff. Plaintiff insisted that if the film was admissible at all, that under the above circumstances the entire film had to be shown to the jury. Mr. Wines testified before the jury that a portion of the film showed someone other than plaintiff. The colloquy before the court upon the question is many, many pages in length. Defendant contended the 90 feet of film showing plaintiff's sister was irrelevant and immaterial, and that "defendant should not be forced to put in evidence matters it did not choose to, and

which it believed to be improper." The court finally ruled: "I will permit the entire film to be shown to the jury. * * * You will show the exhibit in its entirety." After long colloquy, and quite lengthy cross-examination of Mr. Wines, the film, defendant's exhibit 9, was shown the jury in its entirety.

No case has been cited convicting the trial court of error or of abuse of discretion under these circumstances. Plaintiff and defendant have each cited Morris v. E. I. Du Pont De Nemours & Co., 346 Mo. 126, 139 S.W.2d 984, 129 A.L.R. 352, and Philippi v. New York, C. & St. L. R. Co., Mo.App., 136 S.W.2d 339, 344. We think this matter was one addressed to the sound discretion of the trial court. No abuse of the trial court's discretion anywhere appearing upon the record before us, the contention of error is disallowed.

■ Defendant next contends the trial court erred in permitting plaintiff's counsel to make improper and prejudicial cross-examination of defendant's witness Eugene W. Wines. Defendant complains that Wines was asked if to secure movie films of various people who had sued defendant he had ever resorted to misrepresentation. That question was objected to, and was not then answered. Some 35 pages later in the transcript, and when Wines was again under cross-examination by plaintiff's counsel, Wines admitted without objection that in the investigation of another case, Seilers v. St. Louis Public Service Company, he had made untrue representations and had then been willing to do so to accomplish his purpose in that investigation. Wines was later asked about certain of his activities in investigating the Roy Moise case, and denied such activities. Wines was also asked certain questions as to his investigation of the instant case and denied them all. The wide range of the cross-examination of Wines was permitted upon the theory that it all went to the credibility of the witness. The defendant's objections to many questions asked Wines were sustained. As to many of the matters mentioned in defendant's brief there were

no objections at all, and we cannot consider them.

Some of the questions asked did contain insinuations and accusations, and the cross-examination in some respects closely approaches the border line of impropriety. By our compelled ruling we do not approve the objected to portion of the cross-examination. We have read, studied and restudied the record as to this complaint. At times the court held control of the proceedings only with the greatest difficulty. But we have concluded that the cross-examination and trial incidents attempted to be called to our attention under Point IV of defendant's brief do not demonstrate either error or manifest abuse of discretion by the trial court. The assignment of error must therefore be disallowed.

Defendant next asserts that the trial court erred in denying its motion for mistrial, because of the misconduct of plaintiff's attorney in accusing defendant of giving false answers to certain pre-trial interrogatories, and in calling defendant's counsel to the witness stand and thus compelling him in the jury's presence to object to testifying.

After defendant had introduced its testimony and rested its case, plaintiff's attorney was asked by the court if plaintiff desired to offer any rebuttal testimony. He replied that he desired "now to place Mr. Stephens (defendant's trial counsel) on the stand." He thereupon asked the court clerk to swear Mr. Stephens. Thereupon Mr. Stephens objected to such procedure and to being called as a witness and stated: "I have no interest in this case whatsoever, other than as an attorney for defendant." Plaintiff's counsel (Mr. Miller) then stated, "Mr. Stephens, I would like to ask you * * *" but he was not permitted by the court to finish the statement. The court then asked Mr. Stephens if he had been subpoenaed. The latter stated he had not been subpoenaed, and stated: "I knew nothing of this until just a moment ago when Mr. Miller asked me to be sworn." The court thereupon properly sustained Mr. Stephens' objection to being called to the witness stand. Plaintiff's counsel did not, in or out of the presence of the jury, give to the court any character of excuse or justification whatever for calling Mr. Stephens as a witness and compelling him, in the jury's presence, to object to testifying.

Plaintiff's counsel also called to the witness stand in rebuttal another attorney, Mr. Bagot, who had assisted plaintiff's counsel in investigation and preparation of the case for trial. In reply to questions by plaintiff's counsel Mr. Bagot testified that plaintiff's counsel had served upon defendant's counsel certain interrogatories requesting the name and address of the witnesses secured by defendant at the time plaintiff was injured at Eighth and Washington. Mr. Bagot was then asked by plaintiff's counsel to identify the defendant's "original answer to interrogatories made by representatives of the St. Louis Public Service Company." Defendant objected to that line of examination as not being rebuttal testimony and as immaterial. The court thereupon expressed doubt as to the materiality of the answer to the interrogatories. Plaintiff's counsel stated it went to what Mr. Bagot did and found. Plaintiff's counsel then stated in the jury's presence: "I submit that your Honor will take judicial notice of the fact that it is the duty of the defendant to disclose the names of all the witnesses, and to give the correct name and correct addresses. We propose to show by the witness that there are witnesses there who could not be found and were not known at the addresses given, and were never known there. I want to show the efforts we made to produce these witnesses. * * * The law says the defendant must give the correct names and addresses. And I want to show * * * that when we went to the witnesses' homes, as shown in the answer to the interrogatories, that we could not locate the witnesses, and that they were not known to have ever lived there."

Defendant moved for a mistrial, insisting that plaintiff's counsel had improperly called Mr. Bagot, and had made the gesture, offer and statements with intent to

prejudice the jury against defendant. During the ensuing lengthy colloquy defendant made repeated motions for mistrial, which the court denied. During the colloquy the court stated "There is no evidence here that these (names) are incorrect or incorrect addresses."

Defendant also assigns error in permitting plaintiff's counsel to make certain closing argument to the jury, in that plaintiff's counsel then stated, (1) that defendant's counsel had hidden and concealed certain exhibits from plaintiff and from the jury (2) that defendant's counsel would persuade witnesses to lie, (3) that defendant's witness Wines did lie, (4) that truth meant nothing where defendant was concerned, (5) and that the truth was manhandled and mishandled by defendant in this case. As to (1) above, when that argument was first made defendant made no objection whatever. When it was later made, defendant's objection thereto was sustained. As to (2) above, defendant made no objection whatever. As to (3) above, plaintiff's counsel did not accuse Wines of untruthful testimony, but counsel's comments in his jury argument as to Mr. Wines' testimony and credibility was a fair comment upon and inference from the testimony. As to (4) and (5) above, defendant's counsel sat mute and made no objection whatever.

■ The above matters of oral argument, the above trial incidents and others too many in number and too long and too involved to here set out, have presented much difficulty upon this appeal. Such questions are not easy of solution. As to much of the oral argument plaintiff's counsel made no apparent effort to confine himself within the limits of legitimate argument, but we are compelled to rule that the trial court may not be convicted of error upon this record. It is difficult for a trial judge to regulate and control jury argument of over-zealous counsel with precision and definiteness. Experienced and able counsel are conscious of it when an improper jury argument is made. In many respects the argument complained of transgressed the bounds of propriety. But opposing counsel may not *first* complain *on appeal.*

■ As to the trial incidents, we are likewise unable to say upon the entire record before us that in its handling of such incidents, or in any of its rulings thereon, the trial court abused the sound discretion with which it was vested by law. By such ruling we do not at all approve the conduct of plaintiff's counsel in these incidents.

It clearly appears from the court's statements to counsel and the jury, and from its rulings, that the court was zealous and alert to protect the rights of the litigants to a fair trial. And we think the court did that. Our own experience in the trial of causes has demonstrated that in the heat and drama of court trials counsel will sometimes do and say things which border upon or exceed the limits of proper court room decorum. On such occasions courts must not hesitate to act with courageous forthrightness. In even a vigorously contested trial before a jury counsel must be deeply conscious that a trial in court must be and remain a proceeding of dignity, the fundamental purpose of which is to ascertain the truth under orderly and time-tested rules of procedure, evidence and conduct which members of the bar should never transgress. While the trial of a client's cause before a jury or court, or both, is essentially an adversary proceeding, it is not a mere contest of words and histrionics between opposing counsel. A trial should never be used by a member of the legal profession as an individual stage for personal aggrandizement, nor as an occasion to be unfair or to cause unnecessary embarrassment to anyone.

■■ It is next urged by defendant that the court erred in giving instruction 1, because, it is asserted, it unduly emphasizes the degree of care required of defendant under these facts. The first paragraph of the instruction merely advised the jury that it was conceded that defendant was a common carrier. The second paragraph cor-

rectly stated the degree of care such a carrier must use for its passengers. The third paragraph applied that degree of care to the instant facts. The fourth paragraph specifically defined the required degree of care as applied to persons engaged in the business of operating motorbuses in transporting passengers for hire. And the last paragraph defined negligence as a failure to exercise the highest degree of care. Highest degree of care and negligence are both covered and defined in this one instruction instead of in the usual two instructions, but instruction 1 is neither lengthy, complex, nor verbose. There is no undue emphasis or repetition of the required degree of care. And in any event repetition or elaboration in an instruction, where there is no misstatement or misdirection as to the law therein, is generally considered to be within the trial court's sound discretion.

Careful examination of the instruction discloses it could not possibly have confused or mislead the jury. And from the instruction, and upon the entire record before us, it does not anywhere appear that the instruction in anywise could have materially affected the merits of the instant action adversely to defendant. This contention of error must be denied.

■ Defendant next contends that the court erred in giving instruction 3. This instruction told the jury that it did not have to be found by them that defendant could or should have known that plaintiff would be injured as she was or that the casualty would occur in the precise manner shown in evidence, but that it was sufficient (as to the issues concededly correctly submitted in instruction 2) if the jury found that injury to someone would likely result as a reasonable and natural consequence of defendant's negligence, if the jury found defendant was negligent. Whether defendant was negligent was properly submitted in instruction 2. We find nothing wrong with this instruction. The principle therein stated has been many times approved. And instruction 3 in this substantial form was approved in Brown v. Reorganization Inv. Co., 350 Mo. 407, 166

S.W.2d 476, 482. Defendant's criticism of the instruction is without merit and must be denied.

■ We come now to defendant's final contention that the judgment of $13,500 is excessive. Plaintiff was 59 years of age when injured. Her right wrist had been fractured in her home on April 13, 1951, but on the morning of June 1, 1951, her physician had approved her return to work for June 4, 1951. Her rate of pay from her prior employer, Bussman Manufacturing Company, was ninety cents an hour for a forty hour week. Overtime had brought her weekly pay to about $53.55. After leaving the hospital on June 13, she received diathermy and massage. Her principal injuries from the instant occurrence were fractures of the right radius and ulna, some resulting atrophy, and bruises. In the operation of June 4, her surgeons removed a section of the ulna which shortened that bone three-eighths to one-half of an inch. At trial time (June 1952) she could not entirely close her right hand, could not move her wrist downward, and could move it upward only about a third of normal; she had a 75% loss of supination of the wrist, a 100% loss of use of the fingers and a 60% loss of use of the right hand, and suffered pain in the wrist. Her total medical expenses were $743.85. Her resulting disability in her hand and fingers prevented plaintiff's return to her former employment of working on fuses.

The briefs cite us to Jenkins v. Mo. State Life Ins. Co., 334 Mo. 941, 69 S.W.2d 666, Lonnecker v. Borris, Mo.Sup., 245 S.W.2d 53, Wofford v. St. Louis Public Service Co., Mo.Sup., 252 S.W.2d 529, State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, Williams v. St. Louis Public Service Co., 363 Mo. 625, 253 S.W. 2d 97, and Hughes v. St. Louis National League Baseball Club, Inc., 359 Mo. 993, 224 S.W.2d 989, 16 A.L.R.2d 904. The above cases, and others, have been examined.

The facts as to the injuries sustained by instant plaintiff and the results of those injuries are to be quickly distinguished from those in the above noted cases. But

the instant facts are somewhat similar to those considered in Lonnecker v. Borris, supra. However, no two cases may be found where the injuries, results and circumstances are exactly alike. It is recognized that no precise formula exists by which it may be determined when or if a jury award of damages is excessive. We have so frequently and so recently stated the factors we must consider upon this issue, that we need not here restate them. Giving due and proper weight and consideration to all such factors, it is our considered opinion that the instant judgment is excessive in the amount of $3,500.

It is, therefore, ordered that if, within fifteen days, the plaintiff-respondent will enter a remittitur of $3,500 as of the date of the judgment below, that the judgment will then be affirmed for $10,000, as of its date; otherwise the judgment will be reversed and the cause remanded for retrial. It is so ordered.

All concur.