STATE v. KELLEY.

1. JURY CHALLENGES.—The right of the accused in the matter of what persons shall compose the jury charged with his trial, is confined to such rejections as he may make within the number allowed by the statute.

2. IBID.—SPECIAL VENIRE.—There is no rule of law or custom in this State which renders it necessary that every member of a special venire shall be present before the name of any one of the jurors included in such venire may be drawn and presented to the accused.

3. EVIDENCE—DIAGRAM.—A picture taken by a photographer, who was present when the prosecutor was shot, of the window through which he was shot, of him in bed in the position in which he was shot, may be introduced as a diagram prepared by the photographer of the surroundings and position of the prosecutor at the time of the shooting.

4. EVIDENCE—CONTRADICTION.—In the trial of this case, one J— was put up by the defence to prove an *alibi*. While on the stand the defence asked him if he had been charged with making offensive statements to the trial justice who issued the warrant for the defendants, about that act. He explained that he was so charged, but did not deny making the statements. The solicitor put up the trial justice to prove he did make the statements referred to. Defence objected, because it was irrelevant, and because he did not deny making the statements. *Held*, by MR. JUSTICE POPE, that the testimony in reply was competent, as tending to test the veracity of the witness, and because the matter was material; by MR. JUSTICE GARY, that it was competent, because in reply to the testimony of the defence. MR. CHIEF JUSTICE MCIVER, *dissenting*.

Before TOWNSEND, J., Darlington, March, 1895. Affirmed.

Indictment against James R. Kelley and J. Newton Kelley, charged with assault and battery with intent to kill upon C. L. Jenkins. Verdict, guilty, with recommendation to mercy.

The defendants appeal upon the following exceptions:

Due notice of intention to appeal was given, and defendants appeal to this court for error in the presiding judge refusing defendants' motion for a new trial:

1. Because that the twelve additional jurors drawn to supply a deficiency in the regular jury were not presented to the defendants in the order and manner required by law,

practice of the Circuit Court, and the rules of the Circuit Court.

2. That the jurors so drawn were not called or presented to the defendants in the order in which they were drawn, nor were their names put in a hat and drawn therefrom by lot, but, without having been called, the names of the first four who appeared in the court room were put in a hat and drawn therefrom, and as so drawn the jurors were presented to the defendants. The jury not being then complete, and two other of the additional jurors having appeared in the court room, their names were then put in the hat and these jurors, as drawn, presented to the defendants, and so the drawing and presentation of the jurors proceeded until the panel was completed; but so soon as defendants' counsel ascertained the manner in which the additional jurors were being drawn and presented, which was directly after the first four were presented, they objected in behalf of the defendants, but the objection was overruled, and the drawing and presentation proceeded as above stated. Before the panel was complete the defendants had exhaused their challenges, and subsequently the twelfth juror was presented and sworn in against their objection, and while they were powerless to reject. It is submitted, that it was error in thus drawing and presenting the additional jurors, and a violation of the rights of the defendants.

3. That the solicitor was permitted to introduce in evidence, against the objection of the defendants, the negative of a photograph alleged to represent the window through which the shooting was done, after the occurrence, with Jenkins sitting on the bed with his head bound in cloths, his honor ruling that it could be admitted just as a diagram could be admitted.

4. His honor, the presiding judge, against the objection of the defendants, admitted testimony as to unfriendly occurrences between defendant's brother and one L. M. Croswell, a trial justice and an influential witness for the State, with which the defendants were in no way connected, and

the only purpose or effect of which was to unjustly and improperly prejudice the minds of the jurors against the defendants.

*Messrs. Boyd & Brown*, for appellants.

*Mr. Solicitor Johnson*, contra.

March 9, 1896. The opinion of the court was delivered by

MR. JUSTICE POPE. The defendants having been convicted and duly sentenced for assault and battery with intent to kill, have appealed to this court. The grounds of appeal will be reported.

The first question, which is raised by the first and second grounds of appeal, may be thus stated: Is it legal, against the objection of defendants interposed at the time, to complete a jury for their trial from the names of jurors on a *special venire*, when the first four of such jurors are presented in advance of the other jurors constituting the special venire, and before such other names are placed in the covered box, and also, when the prisoners have exhausted their right of challenge, two additional juror's names are placed in the covered box and drawn, as required by law, to complete the panel?

It seems that of the thirty-six persons who composed the petit juries, twelve were in the jury room engaged in making up their verdict in another case, and when the prisoners were being tried, they exhausted the remaining twenty-four names by their challenges, still leaving the jury for their trial incomplete; that thereupon the Circuit Judge ordered a special venire of twelve to be made up in accordance with our statutes. Of this special venire four jurors appeared in court, and the presiding judge ordered their names to be placed in the covered box to be drawn and presented to the prisoners. In challenging some of the four jurors, the jury still lacked one of completion, but the defendants had exhausted their challenges. Two others of the special venire came into court, and the Circuit Judge ordered their

names to be placed in the covered box and one to be drawn therefrom, thus completing the jury. The defendants objected to this *last step*, and requested that the remainder of the special venire (eight) should be placed in the covered box before any one of them should be drawn. The presiding judge overruled this objection.

We do not think the Circuit Judge erred in overruling the objection. It is now settled law in this State that the right of the accused in the matter of what persons shall compose the jury charged with his trial is confined to such *rejections* as he may make within the number allowed by the statute. When the accused has exhausted his challenges, the next juror, or jurors, drawn, necessary to complete the panel, must sit. We know of no law or custom in this State which renders it necessary that every member of special venire shall be present before the name of any one of the jurors included in such special venire may be drawn and presented to the accused. There is no complaint here that the names were not drawn by lot from a covered box by a boy under ten years of age, but only that all the names on the special venire were not placed in the covered box before any one was drawn therefrom. These objections cannot be sustained.

The next question suggested by the appellants is contained in the third ground of appeal, namely, that it was error to allow the witness, M. A. Helm, who was a witness for the State, to testify in the reply, as to a negative photograph he had made the next morning after Mr. Jenkins was shot, of the window through which he was shot, and also of Mr. Jenkins in the position in the bed he was in when shot, and also to exhibit the photograph to the jury. In the direct examination of this witness no reference was made by the solicitor to this matter, but when the defendants' counsel was cross-examining this witness he asked him: "What was your business in Hartsville?" Answer: "Taking pictures, sir." "Did you take any for Mr. Jenkins?" Answer: "I took some for him the morning he was

shot that night, the 22d." "Do you mean his own pic-
ture?" Answer: "Yes, sir." "Did you take any others for
him except his own?" Answer: "No, sir; only I took a
picture of the window where he was shot, he sitting by it
in the position he was in when he was shot." "Did Mr.
Jenkins have any connection with your line of business?"
Answer: "None at all." When the solicitor examined this
witness in reply he asked the witness: "Have you the neg-
atives with you of that room?" Answer: "I believe I have
a proof of one that was taken of him at the window."
Question: "When did you take this picture that Mr. Brown
asked you about—this of Mr. Jenkins—when did you take
it?" Answer: "I took it the next morning after he was
shot." Question: "This is a representation of what win-
dow?" Answer: "Of the window that is south, I suppose.
That is the window in our room; the window through
which he was shot." Question: "Where were your instru-
ments when you took this, inside or outside the house?"
Answer: "It was outside." Question: "Where was Mr.
Jenkins at the time you took that picture?" Answer: "He
was sitting near about where he was when he was shot."
The solicitor here offered to introduce the picture in evi-
dence. Defendants' counsel objected. The court practically
ruled that the picture might be introduced as a diagram
prepared by Mr. Helm. We think there was no error here.
This witness was inside the room where Mr. Jenkins was
shot, at the time it happened; he saw one of the defendants
in the room at the time of the shooting, and heard that de-
fendant request Mr. Jenkins to sit up in bed, in which po-
sition Mr. Jenkins was when he was shot by some one just
outside the window, and through a pane of glass in the
sash of the window. Mr. Helm made this picture the next
morning after the shooting, and, at the request of the so-
licitor, explained to the jury, from this diagram he himself
had made, where the shot went through the pane of glass,
and Mr. Jenkins' position in bed when he was shot. It
seems to us that this was perfectly competent. In the case

of *Ropley* v. *Klugh*, 40 S. C., 134, this court held that a diagram of a small lot of land, made by one who was not a surveyor, might be admitted in testimony to explain the impressions of a witness, who was not an expert, "of the form of a house, direction of a road, or, it may be, the way a piece of land appeared to the witness as to its direction from any given place or road." We do not well see how a witness could better illustrate to a jury the position of the man when he was shot than by a picture, especially as this witness saw for himself everything, all the surroundings of Mr. Jenkins, at the time he was thus stricken. It might present another question, if this photographer had made the picture from what others told him and not from his own knowledge. It makes no difference that Mr. Jenkins had his head "in bandages" when the picture was taken. It was not denied that he was shot on the night in question, or that his head was bandaged the next morning.

The last question presented by the appeal is furnished by the fourth ground of appeal. To understand this matter, a statement of facts relating to the testimony of L. M. Croswell, a witness for the State, may be necessary. One Shelton Kelley, who was the brother of the two defendants on trial for the attempted assassination of one Mr. Jenkins, while on duty as a State officer, approached the trial justice who had issued the warrant for the arrest of the two defendants at Darlington Court House, during the term of court at which the trial of defendants occurred, and said to him: "Nobody but a God damned rascal would have issued the warrant for brother Jim, and you will catch hell for it." It seems that Mr. Croswell, the trial justice, promptly reported this matter to the court, and rule was issued against said Shelton Kelley requiring him to show cause why he should not be attached for contempt of court. Now, when the defendants opened up their defence, this same Shelton Kelley was used as one of their witnesses to prove an *alibi* for the defendants, and for other purposes, and before their attorney closed his exam-

ination in chief of this witness, he said to him: "You have been charged here in open court with having behaved very improperly to Judge (trial justice) Croswell. I now give you the privilege to make any statement about it." Answer: "When I found out I had done that, I went to Mr. Croswell and told him I was mighty sorry it happened, and begged his pardon. I told him I would not have done that for the world. I did not want him to think I had the least ill will against him; I begged his pardon. I felt mighty sorry about it." . Q. "What condition were you in, that you didn't remember anything about it?" A. "I was tight." Q. "That hardly expresses it?" A. "I don't believe it does." * * * Cross-examination by the solicitor: Q. "In front of the court house last Monday, didn't you say to Mr. Croswell this: that nobody but a God damned rascal would issue the warrant that he did against your brother Jim, and that he would catch hell about it?" A. "I don't recollect it, if I did." Q. "That sounds like a pretty connected statement?" A. "I have no recollection of it. I am very sorry." * * * Q. "You don't remember talking to Croswell?" A. "I declare I don't." * * *

When the defence closed their testimony, the State placed Trial Justice Croswell on the stand, and the testimony of this witness tended to establish that, although the witness, Shelton Kelley, was drinking when he made the remark he did to Mr. Croswell, said Shelton Kelley knew what he was doing and saying, and, also, that he was in such a condition as to know and remember all he did or said; that *he did use the very words charged.* And to this last testimony the defendants objected as irrelevant, and, also, that Shelton Kelley had not denied the use by him of the language imputed to him. The defendants set up, in their last ground of appeal, the relevancy of the testimony, and, also, that Shelton Kelley, by not having denied the use of the language, made the testimony of the State incompetent. We regard this ground of appeal as untenable, for, in our view, the testimony is both relevant and competent, and these are our

reasons for so holding. The testimony is relevant, because it was one of the methods employed to show that the testimony of Shelton Kelley, when he swore that his brother, James R. Kelley, was not present in Hartsville at the time the attempt at assassination was made, was false; he who swears falsely as to one thing may not be believed when he swears to another. In other words, this is a recognized method to test the veracity of the witness. The testimony was competent, because it is one of the exceptions to the general rule, that you cannot contradict a witness who testifies that he does not remember whether he did or said a certain thing. If the matter alleged to have been done or said by the witness, which is not denied by him, happens to be immaterial, or not an issue in the cause, its truth cannot be established. On the other hand—as in this case—when the matter is material, or an issue in the case, its truth can be established, notwithstanding the witness who is assailed, may seek to avoid the matter by pretending that he does not remember whether he did the act or uttered the words charged against him. This matter has been set at rest in this State by the recent case of *The State* v. *Sullivan*, 43 S. C., 205. Mr. Justice Gary, in announcing the judgment of the court, said: "Starkie on Evidence, at page 213, thus states the rule: 'If the witness neither directly admit nor deny the act or declaration, as when he merely says he does not recollect, or, as it seems, give any other indirect answer, not amounting to an admission, it is competent for the adversary to prove the affirmative; for otherwise, the witness might, in every such case, exclude the evidence of what he had done or said, by answering that he did not remember.' 7 Am. & Eng. Enc. Law, p. 109, says: 'Every witness under cross-examination in any proceeding, civil or criminal, may be asked whether he has made any former statement relative to the subject matter of the action and inconsistent with his present testimony, the circumstances of the supposed testimony being referred to sufficiently to designate the particular occasion; and if

he does not distinctly admit that he made such a statement, proof may be given that he did not, in fact, make it.' The evidence that the witness, Finley, gave on the stand was unquestionably relevant, and the testimony of contradictory statements at other times should not have been excluded."

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE McIVER, *dissenting.* While I agree with Mr. Justice Pope in the conclusions which he has reached on all the other points, I cannot agree with him in the view which he takes of the fourth ground of appeal. In 1 Greenlf. on Ev., sec. 449, it is said to be: "A well settled rule, that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony," and this doctrine is quoted with approval in the recent case of *The State* v. *Wyse*, 33 S. C., at page 592. Now in the case under consideration the issue to be tried was whether the defendants were guilty of the dastardly attempt to assassinate Jenkins, and the question whether Shelton Kelley, who was examined as a witness for the defence, had used the very improper and reprehensible language to the trial justice which was imputed to him, was clearly collateral to the issue on trial; and, therefore, under the rule above stated, it was not competent for the solicitor to offer testimony to contradict his denial that he had used such language, even though the object of such testimony was to discredit the witness, Shelton Kelley. The case of *The State* v. *Sullivan*, cited by Mr. Justice Pope, does not touch the point here considered; indeed, it—impliedly, at least—recognizes the correctness of my position; for Mr. Justice Gary, in delivering the opinion of the court in the Sullivan case, was careful to say that the testimony of Finley, which it was proposed to contradict, was *clearly relevant* to the issue on trial, as it undoubtedly was; and, what is more, he makes a quotation

from sec. 462 of Greenl. on Ev., which contains these words: "But it is only in such matters as are relevant to the issue that the witness can be contradicted." I think, therefore, that the judgment should be reversed on the fourth ground, and a new trial ordered.

MR. JUSTICE GARY, *concurring.* In my opinion, the question raised by the fourth exception must be decided upon a principle different from that stated by Mr. Justice Pope in the leading opinion herein or by Mr. Chief Justice McIver in his dissenting opinion in the above stated case. Shelton H. Kelley was examined as a witness for the *defence,* and upon his examination *in chief* testified both as to the language which he used in speaking to the trial justice about the arrest of his brother, and also as to his (Shelton H. Kelley's) condition at that time, caused by strong drink. The State then cross-examined him as to those matters in regard to which he had testified upon his examination *in chief.* The testimony of the trial justice, introduced for the purpose of disproving the statements made by Shelton H. Kelley, was objected to on the ground that it was *irrelevant,* and that Kelley did not *deny* it. If the *defence* had not brought out, upon the examination *in chief,* the testimony of Shelton H. Kelley as to the language which he used towards the trial justice, and his condition at that time from intoxicants, then the State would not have had the right, upon cross-examination, to lay the foundation for contradicting him by evidence of contrary statements made at other times, unless such statements were material. *State* v. *Sullivan,* 43 S. C., 205. That principle, however, does not apply to this case, as the facts are different. The rule governing this case is thus expressed by Chief Justice Simpson, in behalf of the court, in *State* v. *Sims,* 16 S. C., 494: "It is a rule of evidence, that before a witness can be impeached by evidence that he has made statements out of court different from those made on the stand, the foundation must be laid by stating to him time, place, and person. We do not see /

that this rule has been violated here; the rule does not preclude a party from proving that what the witness has testified to in court is untrue. If *so, truth,* which is the object of judicial investigation, would seldom be found. The question was, did the defendant, Sims, use a certain expression, and, also, whether Mikell was there. Sims had denied using the expression, and Mikell had denied being present. The State was allowed, after these denials, to prove that Sims did use the expression and that Mikell was present. This violated no rule of evidence." See, also, *State* v. *Mays,* 24 S. C., 195; Gr. on Evidence, sections 449, 450, and 461; *State* v. *Goodwyn,* 9 S. E. R., 85. I, therefore, concur in the result announced by Mr. Justice Pope.