HARRISON v. GREEN.

1. TRIAL—PRACTICE—EXCLUDING WITNESSES FROM ROOM.

In an action for negligent injuries, the exclusion of witnesses from the courtroom is held to be in the discretion of the trial court.

2. EVIDENCE — PHOTOGRAPHS — CHANGES IN PREMISES OR CONDITIONS.

Photographs of the machine and room in which plaintiff was injured are not rendered inadmissible because the witnesses for the defendant were grouped in them approximately as defendant claimed they were at the time of the injury.[1]

3. SAME—WITNESSES—INSTRUCTIONS TO JURY.

Where attorneys for both sides, in an action for personal injuries, submit a cause to the jury on the theory that the issue was the veracity of the respective witnesses, an instruction to the jury that there was no room for an honest mistake is open to criticism but does not warrant a reversal; the verdict being supported by a preponderance of the evidence.

Error to Oakland; Smith, J. Submitted June 9, 1909. (Docket No. 13.) Decided July 15, 1909.

Case by William Harrison, by next friend, against Geralds T. Green for personal injuries. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*Devine & Snyder*, for appellant.

*Patterson & Patterson*, for appellee.

Defendant is the owner of a packing house in the village of Oxford, in which there was installed a power meat chopping machine, driven by steam and operated by means of a belt running over loose and tight pulleys,

---

[1] As to use of photographs in evidence, see note to *Dederichs v. Railroad Co.* (Utah), 35 L. R. A. 802.

governed by a hand lever, situated at or near the chopper. The power can also be turned off by means of a valve in the steam pipe situated quite handy to the machine. The chopper consists of a hopper, and attached thereto and standing at a right angle at one side is a cylinder in which is enclosed a steel auger, revolving at a speed of from 200 to 300 revolutions per minute when running, which drives the meat thrown into the hopper through holes in steel plates, attached to the front of the cylinder by means of a metal cap, against a revolving chopping knife. These steel plates have different-sized holes, and, in order to get satisfactory results, it becomes necessary to change the plates in the machine as the meat is desired chopped finer. After meat has been run through once, these plates are apt to get stuck tight, and it is impossible to get the plates out without loosening them from the inside. Plaintiff was working for defendant as a butcher, and one of his many duties was to operate this meat chopper whenever called upon by defendant to do so. The chopping machine stands in the center of the room with the cylinder part pointing toward the north. On February 22, 1908, defendant came to the packing house with a quantity of hamburger steak, and requested plaintiff to run it through the chopping machine. It was necessary to run the meat through twice. He had run it through once, and claims that, while he was fixing the machine preparatory to running the meat through the second time, the accident occurred.

Plaintiff in his testimony described the situation and manner of the accident as follows:

"The machine stands in the middle of the floor against a wall so that you cannot get around it. The belt runs behind the machine against the wall toward the ceiling. In order to get around the machine, one must pass in front of it. The lever is on the right-hand side of the machine looking at it from the front. When I chop meat, I stand on the left side of it; so does the tub having the meat, toward the back. I stand on the left-hand side in front of the tub and feed the machine with both hands.

In order to turn the power off the machine, I reach my hand over to the left above the machine, and turn off the valve which comes through the wall. This valve turns off the steam. The belt keeps running after you have turned the steam off. The belt can be shoved from one pulley to another by the lever. The lever is on the right-hand side of the machine. In order to turn the lever off, I would have to walk around the machine to the front of it. I cannot turn off the lever in any other way. When I was chopping the hamburg steak, Mr. Green was outside somewhere. He came in as I stepped over to slow the machine down. I was going to slow it down with the valve. He walked up and pulled the lever for me. He didn't touch the valve. He pulled the lever. That would throw the belt over on the other pulley. He was on the right-hand side of the machine. I walked over to the left-hand side to slow the machine. After the machine stopped, I had the cap off from the front of the machine, and I tried to pull the knives out, which would not come for the meat stuck around them, and I put my hand in the machine to loosen the knives up and shove that auger part out, and, when I put my hand in, Mr. Green pulled the lever. He and I were on the same side of the machine at that time. He was standing toward the wall, and I was in front of the machine. I was in front of the machine, then Green, and then the wall. I saw him turn the lever.  *  *  * I took the cap off the front after I had this machine slowed down. Mr. Green had stopped the machine for me, and I took the cap off from the front and took the knives off, and I put my hand in the machine to loosen the knives, and he pulled the lever again. I saw him pull the lever.  *  *  * While I was putting my hand in, Mr. Green pulled the lever, and I was not aware of it.  *  *  * He was standing by the lever when I put my hand in. He was alongside of me."

The claim on the part of the defendant is that plaintiff carelessly pushed his hand against the knives while pressing the meat into the chopper, and that defendant was not present when the accident happened. The evidence to sustain this claim is as follows: Defendant testified that he was outside the sausage room when the accident occurred; that he had started towards the door leading into that room, and heard plaintiff " holler;" that he ran to his

assistance, grabbed the belt and lever, and stopped the machine with plaintiff's hand fast in it; that Mr. Burkhardt came in, took the rim off with a wrench; that plaintiff and Burkhardt then turned the wheel backwards to loosen it and got his hand out; and that he (defendant) went to the telephone and called a physician.   One Cyrel Cole, a boy 13 years old, testified that he was holding the rope that held the pulley; that he watched plaintiff feed the machine; that he was shoving the meat down with his hands; that he stuck his hand into the screw and "hollered;" that defendant was standing in the door when he "hollered;" and that defendant ran up to the machine, grabbed the belt, and put the power off; and that Mr. Burkhardt ran up, got a wrench, unscrewed the rim, and took plaintiff's fingers out.   One Harold Williams, a boy 12 years of age, testified that he stood there watching plaintiff feed the meat into the machine; that plaintiff said nothing until he got his fingers caught in the machine, and that he "hollered;" that defendant was in the other room or next to the door, "came running in almost immediately, pushing me aside, grabbed hold of the wheel and belt, and stopped the machine."   The physician, Dr. Mackinnon, testified that Mr. Green asked plaintiff how it happened, and plaintiff answered that his hand was caught while he was pressing the meat down into the machine.   Defendant also testified to this conversation. Another witness also testified that plaintiff told him that he stuck his fingers in too far.

The case was submitted to the jury, who found a verdict for the defendant.

GRANT, J. (*after stating the facts*).   Four errors are assigned :

(1) That the court erred in refusing to exclude all witnesses from the courtroom upon plaintiff's motion.

(2) That the court erred in its rulings on admitting and excluding evidence.

(3) That the court erred in admitting a photograph.

(4) That the court erred in his instructions to the jury.

1. In civil cases the exclusion of witnesses from the courtroom during trial rests in the sound discretion of the trial court. *Johnston* v. *Insurance Co.*, 106 Mich. 98 (64 N. W. 5); *McIntosh* v. *McIntosh*, 79 Mich. 198 (44 N. W. 592); 2 Shinn on Pleading and Practice, p. 39.

2. We find no error in the court's rulings excluding and admitting evidence. We do not consider them of sufficient importance to require discussion.

3. The photograph, to the introduction of which objection was made, was taken with the two boys standing in the position in which they testified they stood at the time of the accident, and with the plaintiff standing at the machine, where the evidence on the part of the defendant placed him. *It also shows the defendant standing at the door where he testified that he stood.* Plaintiff on cross-examination was shown this photograph, and testified that it correctly represented the interior of the room and the situation of the machine. He then pointed out on the photograph where he stood and where the boys stood. It is claimed that the presence of these parties in the photograph rendered its admission incompetent, and that it naturally tended to prejudice the jury by placing before them in a vivid manner the claim of the defendant. I think it would be a reflection upon the intelligence of the jury to hold that they were liable to be misled or unduly influenced by an examination of the photograph. It represented the witnesses in the exact position which defendant claimed they occupied. It is conceded that the photograph would have been admissible without the presence of the persons in it. If such a photograph had been introduced and the witnesses asked to mark in any manner the places where they stood, such evidence certainly would have been competent. The symbol or mark by which their location is indicated is wholly immaterial.

The authorities I have been able to find sustain the ruling of the court. *Shaw* v. *State*, 83 Ga. 92 (9 S. E. 768); *Glazier* v. *Town of Hebron*, 62 Hun (N. Y.), 137 (16

N. Y. Supp. 503); *State* v. *O'Reilly*, 126 Mo. 597 (29 S. W. 577); *State* v. *Kelley*, 46 S. C. 55 (24 S. E. 60).

In *Shaw* v. *State* the facts are substantially the same as in the present case. In that case persons were placed in the same positions said to have been occupied by the defendant and his accomplices. It was held not error to admit it; the court saying that they had examined the photograph, and did not see in what respect it was calculated to inflame the jury. The case was reversed on other grounds. It appeared that the evidence did not exactly locate the position of the defendant, and the court suggested that upon the new trial the State prove more certainly that the photograph represented the defendant's position at the time of the homicide.

In *Glazier* v. *Town of Hebron* a photograph was taken of the place after a fence had been erected, and the photograph was held properly admitted.

In *State* v. *O'Reilly* three prearranged figures were grouped in the photograph to indicate the actors in a homicide. It was held admissible.

In *State* v. *Kelley* the prosecutor was shot through a window while on his bed. The charge was assault and battery with intent to kill. The photograph was taken the next day with the prosecutor sitting on the bed with his head bound in cloths in the position the State claimed he was in at the time of the shooting. The photograph was held admissible. See *Dederichs* v. *Railroad Co.*, 14 Utah, 137 (46 Pac. 656, 35 L. R. A. 802, and note).

Counsel for plaintiff cite *Fore* v. *State*, 75 Miss. 727 (23 South. 710). In that case neither the statement nor the opinion of the court states what the photographs showed or the evidence explaining them upon which the ruling was made that they were inadmissible. The court in its opinion upon the point said:

" " The pictures were not photographic representations of the scene of the lamentable tragedy. They were artistic reproductions of situations carefully planned by the State's chief witness."

If the facts upon which the court ruled were stated, it might appear that the ruling was correct.

4. The serious question in the case arises upon the charge of the court. It is urged that the trial judge clearly indicated his disbelief in the evidence of the plaintiff, and that it was impossible for the witnesses for the defendant to be mistaken, and that he impressed upon the jury his own opinion of the evidence. This allegation of error is based upon the following excerpts from the charge:

" I feel obliged to be a little more pointed than counsel were in this. Speaking for myself, I am unable to see how all of these witnesses could be mistaken about it."

To this and as a part of the same sentence the court added:

" And in my point of view it raises a square question of veracity between these witnesses, and the case has been tried upon that theory, gentlemen, by both sides."

Previous to this excerpt, the court had stated the theory of both parties, and had stated that it raised a square question of veracity. Complaint is made to the following excerpt:

"Speaking for myself, I do not see how there is any room for mere forgetfulness or mistake as to that."

Just previous to this excerpt the court had stated:

" The defense, both in the opening statement of counsel and as presented by witnesses, is upon the theory that Mr. Green was not near the machine at all. Now, gentlemen, it belongs to you to determine which of these witnesses is stating the truth. Let me repeat."

The judge then made the statement now complained of. The following excerpt is also complained of:

"Now, I go out of my way to say this to you, gentlemen, because the case calls for it: That where there are an equal number of witnesses on each side and they are of equal character, and their examination and cross-examination are apparently equal, that then you will find it impossible to tell who is telling the truth. But something

like 30 years' experience in court I have never found just such a case as that yet."

Immediately following this the court said:

"So it becomes necessary for the jury to determine whether the testimony of one witness is to be believed as against that of several. Of course, if the testimony of several appears to be equally truthful, the witnesses are of equally good character, there is nothing about the case that will inform you or give you any clue as to whether the four are correct or the one. Then the four would naturally be believed by the jury, and the preponderance of testimony would be with the four. But sometimes it happens that the jurors are able to know or determine from the surroundings of the case or from some corroboration and from other parts of the testimony and from witnesses, that the one is actually stating the truth and the three or four or half dozen or more are either mistaken or wilfully have stated an untruth. If from the surroundings of the case and from the testimony in the case the testimony of the one witness convinces you that he is telling the truth, you feel it and know it or there is a greater probability of his telling the truth, so much so that you have a belief that the other number are mistaken or have stated an untruth, then, of course, you do believe the testimony of one as against the testimony of several, and in such an event as that you are to receive the testimony of one and act upon it, and it will create a preponderance of the evidence. Why, because the term, preponderance, of itself does not depend upon the number, but it is a term used rather as denoting the character and weight of the testimony, and would be a preponderance of evidence because you believe it in your own minds as jurors, and disbelieve the testimony of the other witnesses that are opposed to it."

Complaint is also made of the following excerpt:

"So in this case, gentlemen, if you can fairly and truthfully say that you believe the testimony of the one witness as against the larger number of the other side, then you may receive it and act upon it, and you will be warranted in saying that you find a verdict for the plaintiff based upon preponderance of evidence. But if, on the contrary, gentlemen, you do not believe the testimony of this young man as against all of these witnesses, then

you cannot fairly say that he has proven his case by a fair preponderance of evidence, and he would not be entitled to any verdict at your hands, but if you do believe it, and do not believe the testimony of the witnesses opposing it, then, as I stated at the outset, he is entitled, not to a mere beggarly sum because the defendant may be able to pay, but he is entitled to a substantial, fair, and full compensation for the injury."

Complaint is also made because the judge said to the jury that they might take into account the fact that the testimony of the plaintiff was not corroborated by any person, and stands alone. At the request of the plaintiff, the court instructed the jury that, if the testimony of the plaintiff was found to be true, he was entitled to recover, and the question of contributory negligence was not in the case. At the close of his charge, the court correctly stated the issue to the jury, saying, in substance, that, if the plaintiff had established his claim by a preponderance of the evidence, he was entitled to recover, but that, if they could not fairly and truthfully say that plaintiff had established his case by a fair preponderance of evidence, they must find for the defendant. Plaintiff's case rested upon his own testimony alone. He was uncorroborated by a single witness or a single circumstance. His version that defendant stood by his side, and, knowing what he was doing and the danger that he was in if the machine were in operation, and deliberately turned on the power, is improbable. It appears from the instruction of the circuit judge that the case was submitted to the jury by the attorneys for both sides on the veracity of the witnesses. This statement by the court is unchallenged. The instruction must, therefore, be criticised in the light of this fact. There was no room for court or jury to find that either the plaintiff or the witnesses for the defense were mistaken. It is a clear case of deliberate falsehood on the one side or upon the other. Five witnesses, only one of whom had any interest in the result of the suit, directly and positively contradicted the uncorroborated statement of the plaintiff.

The charge of the court cannot be construed into the expression of a belief in the witnesses for the defendant. He was referring in that portion of the charge to the plaintiff's witness upon one side and the defendant's witnesses upon the other, and said to the jury, in substance, there is no room for an honest mistake. Either the plaintiff tells the truth and the defendant's witnesses have falsified, or the plaintiff has falsified and the defendant's witnesses have told the truth. That was the issue and the sole issue before the jury. Counsel had argued the case upon that theory, and the court submitted it to them upon the same theory. While the charge of the court may be subject to criticism, I do not think that it contains any prejudicial error under the circumstances, and that the judgment should be affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.