# FLOYD PALMER, JR., Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Sept. 4, 1968.

Certiorari Denied by Supreme Court Dec. 16, 1968.

Douglas A. Meyer, Chattanooga, for plaintiff in error.
George F. McCanless, Atty. Gen., of Tennessee, Robert F.

Hedgepath, Asst. Atty. Gen., Nashville, Gerald Summers, Asst. Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

OLIVER, Judge.

Floyd Palmer, Jr., the plaintiff in error and defendant below, was convicted of first degree murder in the Criminal Court of Hamilton County and was sentenced to imprisonment in the State Penitentiary for twenty years and one day. His motion for a new trial being overruled, he prayed and was granted and has perfected an appeal in the nature of a writ of error to this Court.

The defendant's four Assignments of Error in this Court, all of which were raised in his motion for a new trial, question the evidence. By his first three Assignments he challenges the sufficiency of the evidence, contending that it preponderates against the verdict of the jury and in favor of his innocence. In examining this contention, we are bound by the well-established rule, settled by numerous decisions of the Supreme Court of Tennessee, that a verdict of guilt, approved by the trial judge, accredits the testimony of the State's witnesses, resolves all conflicts in the testimony in favor of the State and establishes the State's theory of the case; that under such a verdict the presumption of innocence which the law throws around an accused and which stands as a witness for him in his trial, disappears, and upon appeal that presumption of innocence is replaced by a presumption of guilt; that this Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict

of the jury and in favor of the innocence of the accused; that we may review the evidence only to determine whether it preponderates against the verdict; and that the defendant has the burden of showing on appeal that the evidence preponderates against the verdict and in favor of his innocence. Turner v. State, 216 Tenn. 714, 394 S.W.2d 635; Chico v. State, 217 Tenn. 19, 394 S.W.2d 648; Johnson v. State, 217 Tenn. 234, 397 S.W. 2d 170; Brenner v. State, 217 Tenn. 427, 398 S.W.2d 252; Owens v. State, 217 Tenn. 544, 399 S.W.2d 507; Harris v. State, 217 Tenn. 582, 399 S.W.2d 749; Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Patterson v. State, 218 Tenn. 80, 400 S.W.2d 743; Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

This rule governing appellate review of criminal convictions makes unnecessary and, indeed, inappropriate, any detailed discussion of the evidence pro and con. Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

While the defendant's wife and children were living in Michigan, he and the deceased, Ada Ruth Goins, lived together in a common-law relationship for approximately two years, occupying an apartment on Walnut Street in Chattanooga. Shortly before the date of the killing, his wife and children returned to Chattanooga. Locking the Walnut Street apartment, he went to live with his sister in order to be able to see his children while they and his wife were in town. On the night of May 28,

1967 the deceased, Arnold Wilson, and Johnny Jones were at the Fourth Street apartment of Lucille Southerland. All of them were drinking. That afternoon the deceased had called the defendant and asked him to remove the lock from their apartment or bring her the key so that she could get her clothes. The defendant appeared at the Southerland apartment shortly before midnight, and some words were exchanged between him and the deceased during which she told him that she had found a lock on the apartment door and she wanted him to remove it so she could get her clothes; there was also discussion about a phone call in which she had threatened him that if he didn't come down there she would cause him some trouble, and he told her that she ought not to be calling him up and threatening him and his wife and sister. The defendant went outside and returned within a few seconds with a single-shot shotgun. There was testimony that before he fired he made a statement to the deceased that "You won't call my wife and me no more," or words to that effect. The deceased arose from her chair, faced the defendant and said, "Don't do it, Palmer." From a distance of only a few feet, the defendant shot the deceased in the chest, killing her instantly. As she fell, she said, "Lord, have mercy, Palmer." At autopsy there was no evidence of any powder burns on her body. He removed the spent shell, reloaded the gun, said, "Call an ambulance" and left the apartment.

The defendant testified that when the deceased called him at his sister's home somewhere near midnight and told him that if he didn't bring the key down there she was going to cause him some trouble, he took the key

and went to Lucille Southerland's apartment; that while he and the deceased were talking about the key, Lucille Southerland pulled a pistol on him and told him she would shoot him if he didn't get out; that one Evelyn Cooper, or Hitchcock, was also there and ran outside and told his nephew, Winston Broome, who had remained in his car, about what was going on; that his nephew then brought his shotgun to him; that he pointed the shotgun at Lucille Southerland and told her to give him the pistol, and that the deceased got up and grabbed the shotgun by the barrel and pulled it around toward herself "and jerked the hammer back just enough to fire," and that it went off accidentally and killed her; that as she fell she said, "Lord, have mercy, Palmer"; that he loved her and did not intend to kill her; that he put a lock on the apartment door when he went to his sister's house, and that he didn't know whether the deceased moved out or not; that after the shooting he left because "I was just nervous; tore me up; shook me up"; and that he got the shotgun at home that evening and had it in his car.

Evelyn Cooper, or Hitchcock, testified that she had been at Lucille Southerland's apartment earlier that evening, had left to go to the washateria nearby, had returned to this apartment and had been there about ten minutes when the defendant came, and that he and the deceased began arguing; that Lucille Southerland pulled a pistol out of the top drawer of a chest; that she left, saw the defendant's nephew outside, told him, "Don't go inside; they have a gun"; that he went to the car and got the gun, and went in the apartment with it; that the defendant was at the door and didn't come outside;

and that both the defendant and his nephew went inside the apartment.

The defendant's nephew, Winston Broome, sixteen years old, testified that about 8:00 or 9:00 o'clock that evening he and the defendant went to the defendant's apartment to get some of his clothes, and also got the shotgun, and then went to see if they could find the deceased to give her the key to the apartment; that they first went to her sister's home, and then to Lucille Southerland's apartment; that the defendant told him to stay in the car and he would give the deceased the key and be right back; that Evelyn Cooper ran out and told him, "They're going to kill Palmer; they've got a gun and gonna' kill him"; that he got the shotgun and loaded it and took it in the apartment and handed it to the defendant; that Lucille Southerland had a pistol aimed at the defendant; that the deceased jumped up and grabbed the shotgun and pulled it around toward herself and it went off; that he did not hear the deceased say anything before or after the shot was fired, and that he and the defendant went back to the car and left. He said that the defendant was not outside of the apartment and did not come to the door.

Lucille Southerland denied that she had a pistol before the shooting, but said that afterwards she handed a pistol to Johnny Jones. He testified that he did not see her pull a pistol, and that after the shooting he went to make a phone call for an ambulance, and that when he returned to the apartment she had a pistol and that he took it from her.

No one except the defendant and his nephew said that the deceased grabbed the shotgun.

■ ■ Clearly, the evidence presented an issue of fact for the determination of the jury. By its verdict the jury rejected as completely diaphanous and transparent the defendant's contention that while Lucille Southerland held a pistol on him his nephew brought his shotgun to him and that he aimed it at her, and that the deceased was killed accidentally when she grabbed the gun and caused it to be discharged. Considering the evidence in the light of the law governing appellate review, as we must, the defendant has failed to carry the burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence. On the contrary, the verdict was fully warranted by the evidence.

In his fourth Assignment of Error, the defendant contends that the court erred in admitting photographs of the deceased showing her lying where she fell and the large wound in her chest, insisting that this evidence was unnecessary to show the position and condition of the body and the nature and location of the wound inasmuch as those matters were shown by competent testimony, and that the pictures were offered only to arouse the emotions of the jury to the prejudice of the defendant. The photographs were admitted over defense objection.

In Hughes v. State, 126 Tenn. 40, 148 S.W. 543, it was insisted by appropriate Assignment of Error that the court erred in admitting two photographs, taken long after the homicide, and based solely upon the memory of a witness, showing the room in which it occurred and the arrangement of the furniture. One of the photographs also showed the figure of a man, not the de-

ceased, lying on the floor with his head under the edge of the bed; and the other photograph showed the figure of a man, representing the deceased, sitting in a chair by a table next to the bed, with a cross-mark on the back of his neck at the center of which it was claimed by the State that the bullet entered the deceased, and another cross-mark was shown in the photograph on the framework of a window where it was alleged and presumed that the bullet lodged after passing through the deceased's neck. Overruling that Assignment of Error, the Court said:

" * * * In brief, Works testified that he knew the position of the various objects referred to, and that the photograph reported them correctly. This was sufficient for the admission of the photograph in evidence. The fact that the photograph was not taken until some time had elapsed after the homicide was not a circumstance of sufficient weight to exclude it. It was introduced only for the purpose of showing the witness' recollection of the position of the objects mentioned at the time of the tragedy, and to aid the jury in seeing these objects as the witness saw them. He testified, in effect that the picture caught by the photographic lens truly represented the picture left upon his memory by his perception of the objects at the time and as he arranged them to give a true, visual reproduction of the impression or imprint left upon his mind by the facts. The truth of his statement as to the correct placing of the objects to be photographed was a matter for the consideration of the jury. The jury were also entitled to weigh his statement as to whether the photograph was a true repre-

sentation of the objects as he had arranged them. In short, it was in the province of the jury to weigh and value all of his testimony, including the photograph, treating that as a part of his testimony.

"The fact that the photograph was not proven by the photographer who made it was immaterial. McGirr Sons & Co. v. Babbitt, 61 Misc.Rep. 291, 113 N.Y. Supp. 753; Smith v. Central Vermont Ry. Co., 80 Vt. 208, 67 Atl. 535; McKarren v. Boston & N. St. Ry. Co., 194 Mass. 179, 80 N.E. 477, 10 Ann.Cas. 961, and note; Consolidated Gas, Electric Light & Power Co. v. State, 109 Md. 186, 72 Atl. 651; Indiana Union Traction Co. v. Scribner ([47] Ind.App. [621]), 93 N.E. 1014. The accuracy of photographs may be proven by any one who knows the fact. Thompson v. Galveston, H. & S. A. Ry. Co., 48 Tex. Civ.App. 289, 106 S.W. 910; Consolidated Gas, Electric Light & Power Co. v. State, supra. They are admissible in evidence when shown to be reasonably accurate representation of the place or thing in question, to help the jury in understanding the testimony of the witnesses. Union Traction Co. v. Scribner, supra; Hassam v. [J. E.] Safford [Lumber Co.], 82 Vt. 444, 74 Atl. 197. They belong in the law of evidence to the same class as models, maps, and plans. It does not affect the admissibility of such a representation, if it be shown that it is incorrect in some particulars, but only its weight. Territory v. Price, 14 N.M. 262, 91 Pac. 733. The purpose of the introduction of such pictorial representations is, as stated, to enable the jury to understand the evidence in relation to the objects or things as presented. West

v. State, 53 Fla. 77, 43 South. 445; Martin v. Knight, 147 N.C. 564, 61 S.E. 447; Kansas City Sou. Ry. Co. v. Morris, 80 Ark. 528, 98 S.W. 363, 10 Ann. Cas. 618; Johnson v. Union Pac. R. Co., 35 Utah 285, 100 Pac. 390; State v. Hersom, 90 Me. 273, 38 Atl. 160. The admissibility of such representations is not affected by the fact that they were made at the instance of the prosecuting attorney for the state, to illustrate his theory of the case (State v. Remington, 50 Or. 99, 91 Pac. 473; Burton v. State, 115 Ala. 1, 22 South. 585; Jarvis v. State, 138 Ala. 17, 34 South. 1025); nor by the fact that the witnesses for the opposite side of the controversy deny their correctness (Moon v. State, 68 Ga. 687.)

"We are referred by counsel for plaintiff in error to the case of Fore v. State, 75 Miss. 727, 23 South. 710, as holding in effect that the use made of the photographs in the present case was not allowable. If such be the proper construction of that case, it is opposed by the weight of authority. In Shaw v. State, 83 Ga. 92, 9 S.E. 768, a photograph of the locality where the deceased was killed, taken with persons placed where defendant and his accomplices were said to have stood, was held competent. In State v. O'Reilly, 126 Mo. 597, 29 S.W. 577, it was held that a photograph was competent which represented the scene of the crime, with persons placed where defendant, deceased, and another person were said to have stood. In State v. Kelley, 46 S.C. 55, 24 S.E. 60, a case wherein a defendant was on trial for an assault with intent to kill, it was held competent to exhibit a photograph representing the window through which

the person assaulted was shot, with that person occupying the position he was in at the time of the shooting. In People v. Mahatch, 148 Cal. 200, 82 Pac. 779, on a trial for homicide, it was held that photographs showing the condition of things in the vicinity where the body of deceased was found, and disclosing the presence of objects correctly placed on the ground by witnesses to indicate where deceased's body, the knife, hat, and coat of defendant, and the hat of deceased were located when the scene of the homicide was first visited, were admissible. To the same effect are Sellers. v. State, 91 Ark. 175, 120 S.W. 840; s. c., 91 Ark. 313, 124 S.W. 770; City of Spokane v. Patterson, 46 Wash. 93, 89 Pac. 402, 8 L.R.A.(N.S.), 1104, 123 Am.St.Rep. 921, 13 Ann. Cas. 706; Britt v. Carolina Northern R. Co., 148 N.C. 37, 61 S.E. 601; Harrison v. Green, 157 Mich. 690, 122 N.W. 205; Bowling Green Gaslight Co. v. Dean's Executor, 142 Ky. 678, 134 S.W. 1115."

In Bass v. State, 191 Tenn. 259, 231 S.W.2d 707, it was assigned as error that the trial judge admitted photographs taken twenty-four hours after the defendant left the scene. There was no insistence that the photographs did not represent the scene as it was first found by the witnesses after the killing. The contention of the defendant was that the pictures were introduced for the purpose of inflaming the minds of the jury and prejudicing his rights. Overruling that Assignment, the Court said:

"If the pictures accurately showed the environment as it existed at a time near enough to the homicide to

warrant an inference that such condition had existed then, they should not, if material, be excluded from evidence upon the possibility that they might unduly excite the emotions of the jury. Hughes v. State, 126 Tenn. 40, 69, 148 S.W. 543, Ann.Cas. 1913D, 1262."

■ The law has long been established that the admissibility of photographs is a matter to be determined by the trial court in the exercise of his sound discretion. Management Services, Inc. v. Hellman, 40 Tenn.App. 127, 289 S.W.2d 711.

■ In this case there is no contention that the photographs objected to were in any way inaccurate nor that they did not fairly represent the conditions shown therein. By agreement of counsel, the State introduced a map of the premises drawn by the investigating officer while testifying, showing the floor plan of the Southerland apartment, the location of the furniture and body of the deceased when he arrived at the scene a few minutes after the killing. Unquestionably, the photographs in question, along with this map, enabled the jury better to understand and assess the value and weight of the testimony of the witnesses. The trial court did not err in admitting the photographs. Nor does the record in any way support the defendant's insistence that the photographs inflamed the minds of the jury and aroused their emotions to his prejudice. Although the jury found the defendant guilty of murder in the first degree, they fixed his punishment at the statutory minimum of twenty years in the penitentiary, plus one day. This does not indicate minds inflamed by prejudice or emotionally motivated.

After a careful review of the entire record, we find no merit in the defendant's Assignments of Error. Accordingly, all of them are overruled and the judgment of the trial court is affirmed.

WALKER, P. J., and GILLIAM, J., concur.