William M. PARKS, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Aug. 12, 1976.

Certiorari Denied by Supreme Court
Oct. 25, 1976.

Jerry H. Summers, Chattanooga, for appellant.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, John W. Goza, Jr., and Jerry S. Sloan, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

## OPINION

WALKER, Presiding Judge.

Convicted in Hamilton County Criminal Court of second degree murder of Willie E. Mahaffey and sentenced to ten years in the penitentiary, the appellant, William M. Parks, appeals in error.

The appellant, age 62, was engaged in selling whiskey and on March 2, 1975, sold a half-pint of whiskey to the deceased who was cooperating with the Chattanooga police in making the purchase. This resulted in the appellant's arrest. A few hours later, the deceased, then intoxicated, returned to the appellant's home and in the bedroom the appellant fatally shot him with a pistol.

In addition to the pistol wound in the head, the deceased had two scalp lacerations about one and one-half to two inches in length. His blood alcohol content was .20 grams percent.

Four persons were present when Officer Huggins arrived at the appellant's house where Mahaffey was still alive. In response to Huggins' inquiry as to what happened, the appellant replied: "I shot him; I killed the son-of-a-bitch." He was arrested and given Miranda warnings after which he said he threw the gun outside the front door. The pistol was never found. He was then taken to police headquarters and, after further warning, he signed a waiver of his rights. At that time he declined to make a statement. When Officer Slaughter told him he was just trying to find what happened, the appellant repeated his earlier statement that he shot Mahaffey and threw the gun outside. He declined to answer any other questions although he again repeated his statement.

Testifying in his own defense, the appellant contended the shooting was an accident. He admitted selling Mahaffey a half-pint of whiskey that day but said he did not know he was an undercover agent. By his testimony, he was taking a nap when someone came in shouting, "Get out of that bed, you son-of-a-bitch." It was dark, he did not have on his glasses and he did not recognize the person. He kept his pistol by the bedside for protection and when he struck the person with it the pistol discharged accidentally. He had known Mahaffey a long time and would not have struck him or shot him if he had known that he was the person in his room. He thought it was an intruder when he struck him. He did not know that Mahaffey had caused his arrest for selling whiskey. He insisted that he struck once with the pistol and that it went off accidentally.

Parks contends the court erred in admitting evidence of his prior crime for selling whiskey. The purpose of this evidence was

to show his motive for the murder. By the state's theory, Mahaffey was responsible for his arrest and Parks' motive was vengeance for Mahaffey's deception. *Williams v. State*, Tenn.Cr.App., 520 S.W.2d 371.

The appellant challenges the admissibility of the photograph of the deceased. His principal complaint, however, is that the court did not grant his special request for instructions on how to consider photographic evidence.

■ The photograph was admissible to show the scalp wounds as well as the location of the bullet wound and to corroborate the medical testimony. It was properly admissible and not inflammatory. The trial judge did not abuse his discretion in admitting it. *Freshwater v. State*, 2 Tenn.Cr. App. 314, 453 S.W.2d 446, cert. denied 400 U.S. 840, 91 S.Ct. 80, 27 L.Ed.2d 74; *Palmer v. State*, 1 Tenn.Cr.App. 223, 435 S.W.2d 128. No special instructions were needed.

■ The appellant says the court erred in admitting his statement on the arrival of the officers to the effect that he had killed Mahaffey. He argues that this was inadmissible because he had not been warned in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

This was a general on-the-scene investigation by Officer Huggins, the first officer to arrive. The investigation was in its earliest stage; four persons were present and no one was arrested or detained. No coercion was involved. The focus of the investigation had not narrowed beyond those four persons there. The statement was admissible. *Ballard v. State*, 2 Tenn.Cr.App. 431, 454 S.W.2d 193; *Suggars v. State*, Tenn.Cr. App., 520 S.W.2d 364.

The appellant insists the court erred in allowing testimony that he relied on his right to remain silent.

After his on-the-scene statement, Officer Huggins told him to make no more statements and then warned him properly. Af-

ter those warnings he told the officer he threw the gun out the front door. At police headquarters he signed a waiver of rights. After first refusing to make a statement he again said he shot Mahaffey and threw the gun outside but then answered no more questions. We find no error.

The appellant was properly warned in accordance with *Miranda v. Arizona*, supra, before making his statements. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court considered postarrest silence for impeachment purposes. In *Braden v. State*, Tenn., 534 S.W.2d 657, our Supreme Court considered comment in closing argument that the accused remained silent on his arrest. The rationale of these cases is that post-*Miranda* silence is too ambiguous to have probative effect.

■ But here, contrary to the facts of those cases, the appellant's silence, short-lived, was preceded and followed by highly incriminating statements which removed any ambiguity that may have arisen from his temporary claim of privilege. His subsequent statement constituted a waiver under *Miranda*. *Bowling v. State*, 3 Tenn.Cr. App. 176, 458 S.W.2d 639. Similarly, it is not prejudicial for an officer to say that after making a statement or answering a question the one being interrogated refused to make any other statement, since this is merely a comment on the scope of the defendant's statements and not a reference to the refusal of the defendant to make any statement at all. This is not a case where the accused remained mute or refused to make any statement.

■ The appellant urges that the court erred in permitting evidence of the deceased's good reputation for peace and quietude. By his testimony the appellant was a friend of Mahaffey for 20 years and would not have shot him if he had known his identity. If this was erroneously admitted, it was harmless.

■ The assistant district attorney general's reference to the appellant's failure to

call witnesses was legitimate argument. *Wheeler v. State*, 220 Tenn. 155, 415 S.W.2d 121.

■ Parks contends the instructions on the presumption of malice from the use of a deadly weapon violates the rule in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508. We held to the contrary in *Armes v. State*, Tenn.Cr.App., 540 S.W.2d 279 (1976). This assignment is overruled. Other special requests were likewise properly denied.

■ The evidence abundantly sustains the verdict. There is no question that the appellant shot Mahaffey and killed him. The jury did not believe his explanation. The killing with a deadly weapon raised a presumption of malice sufficient to justify the conviction for murder in the second degree. *Humphreys v. State*, Tenn.Cr.App., 531 S.W.2d 127.

All assignments are overruled and the judgment is affirmed.

TATUM, J., concurs.

GALBREATH, Judge (dissenting).

The defendant admitted at the time of his arrest, and when he took the witness stand in his defense, that he shot and killed one Willie E. "Junior" Mahaffey. There was evidence that he had illegally sold a half pint of whiskey to Mahaffey a few hours before, for which he had been arrested. It is not shown in the record that the defendant had knowledge of the fact that Mahaffey had been acting in cooperation with the police in making the purchase, but it was the theory of the State that he must have known of the betrayal by his long time acquaintance and customer, since the sale resulting in his arrest was the only one made that day, and that Mahaffey's duplicity was the motive for the killing.

The defendant's explanation to the jury was that the slaying was an accident. That in the middle of the afternoon of March 2, 1975, after he had been arrested that morning, he went to sleep on a couch at home. He testified he was abruptly awakened by someone who had entered his home and was shouting at him, "Get out of that bed, you sonofabitch." He stated he kept a loaded pistol on a chair because he had been robbed a number of times, and that he grabbed the pistol because someone was, as he put it, "coming in on me and hit whoever it was . . . with the gun, and it went off . . . it was dark . . . (a)nd I stood there a few minutes and he didn't move, and so I went over and cut the lights on and went back over there to see who it was." The defendant stated emphatically that if he had known who the intruder was, he would not have reacted as he did.

This 62-year-old appellant made no effort to conceal the fact that he had shot the deceased, and on two occasions told the investigating officers that he had done so. After being adequately advised of his rights as a suspect under the guidelines laid down in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he was asked to explain the circumstances of the shooting, and according to testimony of the officer, admitted over objection, the defendant stated he did not want to make any statement at that time. The prejudicial effect of making known to the jury this refusal on the part of the defendant to explain away the natural suspicions under which the investigating police were laboring, knowing the defendant had killed the victim, was illustrated and emphasized by the prosecuting attorney in his summation touching on the incriminating silence of the accused: " . . . he admitted this to Detective Slaughter within an hour of the same time he admitted this to Officer Huggins. But he wouldn't tell him anything else. That's all he wanted to tell him."

I would hold that it was gross error to permit proof of the refusal of the defendant to explain the circumstances surrounding the shooting at the crucial time he was confronted by policemen obviously bent on seeking evidence against him for use in a criminal prosecution. "It is impermissible,"

the United States Supreme Court made clear in its famous footnote 37 to *Miranda v. Arizona,* supra, "to penalize an individual for exercising his Fifth Amendment privilege when he is undergoing police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

Our own Supreme Court has likewise made it clear that proof of silence is not admissible in a situation "where a defendant remains mute or asserts his right to do so when questioned about participating in criminal acts, a silence in the face of accusation or interrogation with respect to crime, from which an inference of guilt may be drawn." *State v. Flanagan,* 223 Tenn. 134, 443 S.W.2d 25, 26 (1969).

That there is no tendency on the part of the Courts to recede from the admonition of footnote 37 is evident in quite recent reiterations of the principle by our highest tribunal. In reversing a State conviction where, as here, the prosecution was permitted to prove at trial that the defendant had failed to tell the interrogating police what he related to the jury as his exculpatory version of the facts surrounding the alleged crime:

> "In such circumstance, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach *an explanation subsequently offered at trial.*" (Emphasis added) *Doyle v. Ohio,* 426 U.S. p. 618, 96 S.Ct. p. 2245, 49 L.Ed.2d 91 (1976)

I must profess an inability to follow the rationale of the majority when it sloughs off the admission of proof of the absence of the defendant's explanation of why he shot the victim as "merely a comment on the scope of the defendant's statements and not a refusal of the defendant to make any statement at all." The defendant admitted readily that which was obvious: that he shot the intruder in his home. He was not required at that time, without the guidance of counsel, to go forward and defend himself. It was his failure to explain pretrial why he shot the victim that was so highly prejudicial, and the jury, being human,

could not help but view this failure to explain as prejudicial. It must be an integral concept of *Miranda* that no accused has to defend himself at any time unless, and until, he chooses to do so by waiving his 5th Amendment privilege not to be a witness. To hold, as apparently the majority does, that because an accused admits obvious facts to the police, then the fact that he does not volunteer other facts making up his defense may be commented upon destroys this privilege completely. Silence can, and often is, particularly when human life has been taken, more condemning than vocal utterances. "For murder, though it have no tongue, will speak with most miraculous organ."

I would reverse the defendant's conviction for second degree murder.

Also, I would not approve the trial judge's admission over objection of a particularly gruesome photograph of the deceased which had little or no probative value or bearing on any factual matter in dispute. This was an extremely close case, and it might well be that if it had not been for the inherently detrimental effect of an unnecessary display of the ugliness of death, the jury would not have convicted the defendant. As it was, the minimum penalty of ten years was fixed by the jury, who could not have regarded the murder as one committed in cold blood, by a criminal seeking revenge on an informer. It was, as aforesaid, the State's theory that the defendant, who had been a bootlegger for many years, was motivated to kill Mahaffey because his old and trusted customer had turned police informant. This was the justification for admitting proof of the criminal conduct involved in the sale of the whiskey to Mahaffey the morning before he was killed. Otherwise, introduction of proof of another crime committed by the defendant would have constituted reversible error. That the proof was relevant because it tended to prove a motive for the later crime brought the otherwise inadmissible evidence under the narrow exceptions making such otherwise incompetent proof admissible. *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523. If

the jury had believed the defendant inveigled in some way to have Mahaffey brought to him so that he could be executed for revenge and to prevent his being a witness against the defendant, this would have established the crime as so premeditated and deliberate as to call for the most severe penalty permissible for first degree murder. The fact that the jury could not find justification to view the crime as urged by the State makes it even more probable that they were unduly influenced and prejudiced by the sight of the bloody remains of the defendant as pictured in the exhibit.

Pictures such as the one of the deceased with a bullet hole in his forehead are not admissible when their prejudicial impact overweighs their probative value. *Palmer v. State*, 1 Tenn.Cr.App. 223, 435 S.W.2d 128 (1968). While the admission of such photographs is within the discretion of the trial judge, it must be demonstrated on appeal that there was some sound reason for the discretionary ruling. The Supreme Court has recently indicated that it is necessary for the record to indicate the basis or rationale for a discretionary ruling adverse to the interests of a defendant in a criminal trial. See *Gray v. State*, 538 S.W.2d 391 (Tenn.1976). Here, no reason was given for admitting the photograph. The trial judge, in ruling on the objection in which the defense asserted its claim of nonrelevancy or lack of probativity, simply stated that he had viewed the photograph and overruled the objection. No reason at all was given for the ruling. I would suggest that it would be well, in all such instances, for the trial judge to hold a hearing out of the presence of the jury, to determine the admissibility of any evidence which the defense contends may prejudice rights of the accused, and make his ruling at the conclusion of such hearing for the record, setting out the basis therefor, in order that appellate review might be facilitated. I am hard pressed to even guess at the reason for admission of this photograph.

The State contends that there was a dispute as to how many times the deceased contended he struck the victim with the pistol before it discharged. The defendant's testimony was ambiguous, although he plainly recalled striking the deceased with the pistol. He did not recall clearly whether he hit the victim once, or more than once, and we are not sure whether it makes any difference to either the defense or to the state. The picture is of no assistance at all in resolving any issue as to whether one or two blows were struck, since the picture, as exhibited does not show more than one place, if any, where the deceased had been hit with the pistol barrel. The medical examiner, who was asked to interpret the picture for the jury, stated that the only visible laceration was connected to the bullet entry wound and could have been caused by the "blast effect of the bullet." Another laceration, the doctor testified, was above the hair line and could not be seen in the photograph. It would seem axiomatic that a picture which does not illustrate that which the State seeks to establish by its introduction has no relevancy. Where, as here, an expert witness is available to describe the extent of, and location of a wound or wounds on a dead body better than a proffered gruesome picture, it is the better practice to avoid the natural negative result of exposing the jury to the grim reminder of just how horrible the appearance of death can be. Any doubt as to the admissibility of any evidence should be resolved in favor of the defendant in a criminal trial. See *Lawless v. State*, 72 Tenn. 173.

Lastly, I doubt the admissibility of proof by the State to show the victim's reputation for being a peaceful and nonviolent person. Although the defendant did attempt to explain that he thought he was being attacked by an intruder, he did not know, according to his testimony, who the intruder was. He emphatically testified that if he had known it was his friend of twenty years standing, Willie Mahaffey, he would not have behaved in the aggressive manner that resulted in the victim's death. This court has held that evidence of the nonviolent nature of a victim may only be shown after the defendant has raised the issue by attacking the character of the deceased.

See *Soloman v. State*, 489 S.W.2d 547 (Tenn.Cr.App.1972).

This appeal presents an all too familiar instance of prosecutional overkill. It would be well for those charged with the responsibility of administering our criminal laws to be mindful of the simple truth that justice is served by affording an accused a fair trial, and is in no way dependent on whether the jury finds for or against the State.

As our Supreme Court observed more than a century ago:

"Although we might be satisfied of the prisoner's guilt, yet it is our duty to see that he has a fair and impartial trial, and this he must have though costs may accumulate and punishment be long delayed." *Stokes v. State*, 64 Tenn. 619 (1875).

I would reverse, and therefore respectfully dissent.